# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON , | ) | No. 75090-9-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| JAMES LEE O'NEIL, JR., | ) ) | |
| Appellant. | ) | FILED: April 3, 2017 |
| | ) | |

APPELWICK, J. — An attorney is duty bound to withdraw when a conflict of interest arises. A trial court abuses its discretion when it refuses to allow withdrawal based on a demonstrated conflict of interest. When the conflict of interest exists because the opposing party has identified as a witness a person that counsel supervises, the trial court should apply the necessary witness test as if counsel had been sought as the witness. If the witness is necessary, counsel must be allowed to withdraw. We reverse and remand.

## FACTS

James O'Neil was originally charged with felony harassment and attempted theft of a motor vehicle. He was assigned an attorney from the King County Department of Public Defense's (KCDPD) The Defender Association Division (TDAD), Anuradha Zangri, f/k/a Anuradha Luthra. O'Neil pleaded not

guilty at arraignment. Later, the State amended the information to replace the original felony harassment charge with a charge of assault in the second degree. Unlike the original charge, this is a "strike" offense. If convicted, O'Neil faces life in prison, because this would be his third strike offense.

Then, with a new attorney, Edwin Aralica of the KCDPD Associated Counsel for the Accused (ACA) Division, O'Neil moved for rearraignment based on ineffective assistance of counsel. He argued that Zangri should have advised O'Neil to plead guilty based on the information available to Zangri regarding the two previous "strike" convictions.

The State requested to interview an employee at KCDPD ACA Division, Haydee Vargas.[1] Vargas is one of KCDPD's experienced attorneys in handling arraignments. The State contends that interviewing Vargas will allow it to judge Zangri's performance and whether it fell below an objective standard.

O'Neil objected to the State's request to interview Vargas because Aralica is Vargas's supervisor and they work in the same office. He argued that allowing the State to interview Vargas would create a conflict of interest for Aralica under RPC 3.7. Alternatively, O'Neil moved for Aralica's withdrawal should the State be permitted to interview Vargas.

The trial court's order preemptively stated that "the State may interview [ACA] attorney Haydee Vargas . . . . [ACA] Attorney Aralica's motion to withdraw

---

[1] A formal request to interview Vargas, via subpoena or otherwise, is not in the record. Rather, the State requested to interview Vargas, and O'Neil filed an objection that asked the court to either stop the interview from taking place, or to grant his motion for Aralica's withdrawal. The State then filed a response to O'Neil's objection arguing that an interview of Vargas is permissible.

under RPC 3.7 is denied. This court does not find a conflict or ethical issue under RPC 3.7. Further, the court will not quash a subpoena for attorney Vargas's interview." O'Neil was granted a stay and discretionary review of this order.[2]

## DISCUSSION

O'Neil makes two arguments on review.[3] First, O'Neil argues that Aralica's subordinate serving as a witness would give rise to a conflict requiring withdrawal. Second, O'Neil argues that the trial court erred in allowing the State to interview Vargas because of that conflict.

### I. Withdrawal For Conflict

O'Neil argues that, because Aralica is Vargas's supervisor, he faces a personal interest conflict under RPC 1.7 that compromises his ability to be an

---

[2] After review was granted, O'Neil filed a motion under RAP 9.11, which provided pertinent facts that have transpired since review was granted. The motion stated that Aralica's administrative supervisory responsibilities over Vargas, such as approving vacation leave, had been transferred to a new supervisor. But, Aralica continues to supervise her substantive job performance. The commissioner acknowledged the filing of the additional evidence, but it does not appear that the commissioner explicitly ruled on that motion.

The motion appears to be counsel's effort to be candid with the court and point out that the factual basis for which he claimed a conflict of interest has changed. He has allowed the court to evaluate whether a remand would be futile given the changed facts. These facts tend to favor the State. And, the State does not dispute the substance of these facts, but relied on the changed facts in a motion to dismiss this appeal, which was denied. We therefore accept the additional evidence and consider the changed facts.

[3] O'Neil also submitted a Statement of Additional Grounds for Review (SAG). The SAG exclusively argues that O'Neil received ineffective assistance of counsel. But, O'Neil sought review of only the trial court's order allowing the State to interview Vargas and denying his motion to withdraw. He did not appeal, nor has the trial court yet adjudicated, his ineffective assistance of counsel claim. We therefore do not consider the SAG arguments.

3

effective advocate. RPC 1.7 states that a lawyer "shall not" represent a client if such a conflict exists. Therefore, he argues that the trial court erred in not granting Aralica's motion to withdraw.

A. Standard of review

Appellate courts review RPC conflict issues, and related motions to withdraw, de novo. See State v. Vicuna, 119 Wn. App. 26, 30-31, 79 P.3d 1 (2003). In Vicuna, the court reasoned that " '[t]he determination of whether a conflict exists precluding continued representation of a client is a question of law and is reviewed de novo.' " Id. (quoting State v. Ramos, 83 Wn. App. 622, 629, 922 P.2d 193 (1996)); State v. Hunsaker, 74 Wn. App. 38, 42, 873 P.2d 540 (1994) ("The determination of whether an attorney's continued representation violates the Rules of Professional Conduct is a question of law and is reviewed de novo.").

In arguing for an abuse of discretion standard, the State cites State v. Orozco, 144 Wn. App. 17, 19-20, 186 P.3d 1078 (2008). That case states, "We review a decision not to disqualify an attorney for an abuse of discretion." Id. at 19. Orozco also states that "[w]e review a determination about whether a conflict of interest exists de novo because it is a question of law." Id. at 20. Thus, it may be true that withdrawal is, generally, a matter of trial court discretion.

But, whether a conflict exists requiring withdrawal is a question of law. See Hunsaker, 74 Wn. App. at 42. We therefore apply a de novo standard in determining whether a conflict exists under the RPCs that would require Aralica's withdrawal. An error of law necessarily constitutes an abuse of discretion. Pub.

4

Util. Dist. No. 1 of Okanogan County v. State, 182 Wn.2d 519, 531, 342 P.3d 308 (2015). If a conflict creates a legal duty to withdraw, denying withdrawal is an abuse of discretion.

B. Conflict

O'Neil contends that the trial court erred in denying Aralica's motion to withdraw due to a personal conflict under RPC 1.7. The right to counsel under the Sixth Amendment to the United States Constitution, includes the right to conflict-free counsel. State v. Davis, 141 Wn.2d 798, 860, 10 P.3d 977 (2000). Specifically, RPC 1.7(a)(2) is at issue here. That rule states that a conflict exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." RPC 1.7(a)(2). O'Neil argues that Aralica's status as Vargas's supervisor constitutes a "personal interest" that would materially limit his ability to represent O'Neil.

Aralica is a felony supervising attorney in the KCDPD ACA Division. Vargas is a staff attorney for the ACA. She handles felony arraignment calendars at the King County Regional Justice Center. Aralica supervises her performance in that role.[4] He is responsible for her professional development, discipline, and work place competence. He is therefore responsible for her doing

---

[4] At the time the opening brief was filed in this case, Aralica was her direct supervisor. O'Neil's additional evidence on review states that Aralica is no longer Vargas' "direct" supervisor. But, he is still responsible for supervising Vargas regarding arraignment issues. And, most importantly for this conflict analysis, Aralica is still responsible for providing input on promotional and disciplinary matters.

a competent job. His natural inclinations, if not duty, would be to defend the work of the attorneys he supervises, his work as supervisor, and his employer.

In contrast, Aralica's duty to O'Neil is to show that the previous counsel was ineffective at arraignment by not anticipating that the state would amend the charges to implicate a third strike and life in prison without parole.[5] The State believes Vargas may have information that would help defeat that claim. Aralica has a clear duty to O'Neil to challenge any of Vargas's testimony that is harmful to O'Neil, including arraignment practices performed by her, witnessed by her, supervised by Aralica himself, and/or approved by their employer. He would have a clear duty to attack her credibility if possible. The personal interest at issue is not merely his relationship with Vargas, but how his own supervisory position undermines his advocacy for O'Neil, if Vargas testifies for the State.[6]

We conclude as a matter of law that a significant risk exists that representation of O'Neil would be materially affected by the personal interests of Aralica under RPC 1.7(a)(2) should Vargas be a witness for the State. The risk attached when the trial court authorized the State to interview Vargas as a

---

[5] "A trial court must sentence a defendant to life without possibility of parole upon a conviction for a third strike offense." State v. McKague, 159 Wn. App. 489, 528, 246 P.3d 558, aff'd by 172 Wn.2d 802, 262 P.3d 1225 (2014).

[6] In response, the State stresses that, at this point, it has been granted approval only to interview Vargas. No authority has been cited to suggest that Aralica's duty to withdraw does not attach until the State names Vargas on a witness list for trial. Nor has authority been cited to suggest he must withdraw at the first possibility of a conflict. The object of withdrawal is to protect the client. Whether an early and perhaps unnecessary withdrawal is better or worse for the client than a withdrawal at the eve of trial is unclear. The conflict issue has been raised promptly when it became apparent. Risk of conflict is significant if Vargas is a witness.

potential witness. O'Neil is entitled to counsel where there is no such risk. O'Neil asserts that right. It was therefore an abuse of discretion to deny the motion to allow Aralica to withdraw.

## II. Availability of Witness

O'Neil argues that appellate courts review the application of RPC 3.7 de novo. We disagree. We review for an abuse of discretion.[7]

O'Neil contends that, under RPC 3.7(b), the conflict discussed above prohibits the State from interviewing Vargas.[8] That rule states: "A lawyer may act as advocate in a trial[9] in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." RPC 3.7(b). O'Neil contends that this rule prohibits the State from interviewing Vargas, because doing so creates a conflict for Aralica under RPC 1.7. This is

---

[7] In Public Utility District No. 1 v. International Insurance Co., 124 Wn.2d 789, 812, 881 P.2d 1020 (1994), the Supreme Court found that a "trial court's ruling under RPC 3.7 to be an appropriate compromise, balancing the interests of both the plaintiffs and the defendants. We find no abuse of discretion." In arguing for de novo review on this issue, O'Neil treats this language in PUD as erroneous. But, subsequent case law has also applied an abuse of discretion standard to RPC 3.7 issues. See State v. Schmitt, 124 Wn. App. 662, 666, 102 P.3d 856 (2004). We therefore review the trial court's order allowing the State to interview Vargas for abuse of discretion.

[8] RPC 3.7 applies to public law offices. State v. Bland, 90 Wn. App. 677, 680, 953 P.2d 126 (1998). Both Aralica and Vargas are members of the ACA Division of the King County Department of Public Defense, and are therefore members of the same office. The State concedes this.

[9] By using the term "trial," the language of RPC 3.7 suggests it may not apply to matters outside of the trial itself. But, our Supreme Court has recently rejected that narrow construction. See In re Disciplinary Proceeding Against Pfefer, 182 Wn.2d 716, 725-26, 344 P.3d 1200 (2015). There, the Court held that RPC 3.7 applies to disciplinary hearings. Id. at 726. It reasoned that RPC 3.7 applies " 'when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.' " Id. at 726.

an atypical RPC 3.7 argument, because the RPCs are not rules governing the admission of evidence. Washington cases that have interpreted RPC 3.7 typically involve one side arguing that the other side's attorney should have been disqualified because the attorney is a necessary witness.

For example, in Public Utility District No. 1 v. International Insurance, 124 Wn.2d 789, 795, 881 P.2d 1020 (1994), multiple public utility districts (PUDs) agreed to settle claims against them. They sought insurance coverage to pay for the settlements. Id. The PUDs' insurers refused to cover the settlements. Id. at 795-96. The circumstances of the previous settlements were key factual issues in the coverage lawsuit brought by the PUDs. Id. at 796. The insurers sought to disqualify the PUDs' counsel because he was a witness to the previous settlements for which coverage was now disputed. Id. at 811.

The court held that the PUDs' counsel need not be called and could remain on the case. Id. at 812. It reasoned that the evidence was available from other sources and it might prejudice the PUDs if their counsel was disqualified. Id. PUD is instructive, but the instant case is procedurally different. The PUD issue did not arise based on a request to bar otherwise admissible evidence, but instead arose because one side sought opposing counsel's disqualification in order to obtain counsel's testimony. Id. at 811.

Another example of a typical RPC 3.7 issue is State v. Schmitt, 124 Wn. App. 662, 102 P.3d 856 (2004). Schmitt sought testimony from a prosecutor who spoke with the victim by the phone shortly after the alleged crime. Id. at 664-65. Schmitt claimed that the victim's story changed after she spoke with the

prosecutor. Id. at 667. He moved to disqualify the prosecutor, because he intended to call her to testify. Id. at 665. The trial court disqualified the prosecutor, and the State appealed. Id. The court found no abuse of discretion in disqualifying the prosecutor, because her testimony was material, unobtainable elsewhere, and key to the defense's theory. Id. at 667.

Both the PUD and Schmitt courts applied a specific test to determine whether the attorney could be called as a witness. PUD, 124 Wn.2d at 812; Schmitt, 124 Wn. App. at 666-67. This "necessary witness" test allows the attorney to be called as a witness only if the attorney's testimony is material, unobtainable elsewhere, and the testimony is or may be prejudicial to the testifying attorney's client.[10] PUD, 124 Wn.2d at 812; Schmitt, 124 Wn. App. at 666-67. If the State sought Aralica's testimony here, the necessary witness test would be directly applicable.

Here, there is no motion to disqualify opposing counsel. Vargas is merely a member of the same firm as Aralica. Nonetheless, once the trial court indicated that Vargas was available for interview as a potential witness, the basis for a conflict of interest became apparent. An inquiry into the facts should have led the trial court to conclude that if Vargas was a witness, Aralica would in fact have a personal conflict of interest and would have been required by RPC 1.7 and 3.7 to withdraw. Given our holding that Aralica will face a conflict as a matter

---

[10] The third factor, that the testimony is prejudicial to the testifying attorney's client, was not relevant in Schmitt. 124 Wn. App. at 667 n.7. The same is true here. The key factors are whether the evidence is material and unobtainable elsewhere.

of law if Vargas serves as a witness, the consequences are the same as if the State were calling Aralica. The ultimate effect is his obligatory disqualification. The policy underlying the necessary witness test is that "a court should not disqualify an attorney absent compelling circumstances." Schmitt, 124 Wn. App. at 666. Moreover, in PUD our Supreme Court highlighted a "valid concern regarding the potential prejudice to the Plaintiffs if their counsel was disqualified." 124 Wn.2d at 812. We therefore hold that the necessary witness test applied in PUD and Schmitt should also be applied when the conflict arises from selection of a witness under the direct supervision of opposing counsel.

We reverse the trial court's order allowing the Vargas interview to proceed and denying Aralica's withdrawal. On remand the trial court must determine if Vargas is a necessary witness. If so, Aralica's motion to withdraw must be granted.

WE CONCUR: