IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | | |
|---|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76136-6-I | |
| | ) | | |
| Respondent, | ) | DIVISION ONE | |
| | ) | | |
| v. | ) | | |
| | ) | UNPUBLISHED DECISION | |
| BRADLEY MICHAEL KEY, | ) | | |
| | ) | | |
| Appellant. | ) | FILED: June 25, 2018 | |
| | ) | | |

LEACH, J. — Bradley Key challenges his conviction and sentence for one count of assault in the first degree and two counts of assault in the fourth degree. First, he claims his right to conflict-free counsel under the Sixth Amendment to the United States Constitution was violated because his attorney had previously represented a witness. Second, he contends that a sidebar during voir dire violated his constitutional public trial rights. Third, Key contends that the trial court sentenced him based on an improper offender score. Because Key fails to show his attorney had a disqualifying conflict of interest or that the sidebar implicated his public trial rights, we affirm Key's conviction. But because the State failed to prove the existence and comparability of prior out-of-state convictions, we remand for resentencing.

## FACTS

In April 2016, Donald Giddings rode his bicycle to a bus stop in Oak Harbor, Washington. There, Giddings saw Key and asked him if he had a cigarette lighter. Key responded, "If you're man enough to smoke, you ought to be man enough to have a lighter." Giddings felt threatened and pulled out a pocket knife, which he kept closed in his hand on top of the handlebars. Giddings called Key a "punk bitch" and rode away on his bicycle to another bus stop. Two other men were waiting at that bus stop.

Key followed Giddings to the second bus stop. Key approached Giddings and demanded that he apologize. Giddings said, "I've done nothing wrong." He took out his knife again, saying, "This is all I did." He then said, "I'm sorry" multiple times.

Key struck Giddings on the side of the head. Key beat Giddings, kicking him and stomping on his head and neck. The two men at the bus stop tried to intervene. Key assaulted them as well—he wrestled one to the ground and pushed the other.

After a trial, the jury convicted Key of assault in the first degree and two counts of assault in the fourth degree. The trial court sentenced Key using an offender score of five based on several foreign convictions. Key appeals his conviction and sentence.

-2-

## ANALYSIS

### Conflict of Interest

First, Key contends that he did not receive effective assistance of counsel because of his attorney's conflict of interest.

Matthew Montoya was appointed to represent Key. The first day of trial, Montoya discovered that he had previously represented Giddings on another matter. Montoya moved to withdraw from the case. Montoya told the court,

> Your Honor, in discussing witnesses, [the prosecutor] brought to my attention a case where Mr. Giddings has a prior conviction, but the case was dismissed. However, it was dismissed after, I believe, a stipulated order of continuance in municipal court. The lawyer of record, however, was myself. I do not recall Mr. Giddings at all in any way, shape, or form. I didn't recognize Mr. Giddings when I saw the initial pictures when discovery was first provided. I did not recognize him. I glanced over the exhibits this morning.

The court provided Key with independent counsel to consult about the conflict issue. Giddings waived the possible conflict of interest. Key did not waive any conflict and requested a new attorney. The trial court denied Montoya's motion to withdraw. Key contends that denying this motion violated his Sixth Amendment right to counsel.

We review claims of ineffective assistance of counsel de novo.[1] We also review whether a conflict exists de novo.[2] The State asserts that a decision to

---

[1] State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).
[2] State v. O'Neil, 198 Wn. App. 537, 542, 393 P.3d 1238 (2017).

-3-

disqualify an attorney for a conflict is reviewed for abuse of discretion.[3] As we observed in State v. O'Neil,[4] "it may be true that withdrawal is, generally, a matter of trial court discretion." "But, whether a conflict exists requiring withdrawal is a question of law," and "[i]f a conflict creates a legal duty to withdraw, denying withdrawal is an abuse of discretion."[5] Because Key contends that a conflict existed that required withdrawal, the appropriate standard of review is de novo.

"The right to counsel under the Sixth Amendment to the United States Constitution includes the right to conflict-free counsel."[6] To show a violation of the Sixth Amendment right to counsel free from conflict, the defendant must demonstrate that his attorney had an actual conflict of interest that adversely affected his attorney's performance.[7] An actual conflict of interest exists when the conflict affects counsel's performance "as opposed to a mere theoretical division of loyalties."[8] To show an actual conflict of interest deprived him of

---

[3] See State v. Orozco, 144 Wn. App. 17, 20, 186 P.3d 1078 (2008). The State also contends that the trial court's factual findings are verities on appeal because Key does not challenge them. See State v. Horrace, 144 Wn.2d 386, 391, 28 P.3d 753 (2001). But the trial court did not enter formal findings; it merely explained the reasoning behind its decision to deny the motion to withdraw.

[4] 198 Wn. App. 537, 543, 393 P.3d 1238 (2017) (distinguishing Orozco, 144 Wn. App. at 20).

[5] O'Neil, 198 Wn. App. at 543.

[6] O'Neil, 198 Wn. App. at 543; see also State v. Dhaliwal, 150 Wn.2d 559, 566, 79 P.3d 432 (2003).

[7] Dhaliwal, 150 Wn.2d at 570.

[8] Mickens v. Taylor, 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).

effective assistance of counsel, a defendant must show that his attorney had a conflict of interest and the conflict adversely affected his attorney's performance.[9]

Because the court inquired into the conflict, Key asserts that he does not need to show any "adverse effect" on his counsel's performance. But Key cites no case that supports his position—that if he raises a potential conflict before trial, the trial court must grant a motion to withdraw, even when its inquiry reveals no evidence that the claimed conflict will adversely impact that attorney's performance. Key distinguishes the leading cases that discuss conflict on the basis of his objection and the trial court's inquiry. But he identifies no case that recognizes different review standards for conflict decisions based on this distinction.[10] On the contrary, in Mickens v. Taylor[11] the United States Supreme Court indicates otherwise.

Mickens stands for the rule that courts apply the same review standard, whether or not the court inquired.[12] Mickens observed that the trial court's failure to be aware of or inquire into a conflict does not make it more likely that counsel's

---

[9] Mickens, 535 U.S. at 174-75; State v. Reeder, 181 Wn. App. 897, 909, 330 P.3d 786 (2014).

[10] See Mickens, 535 U.S. at 165-68; Dhaliwal, 150 Wn.2d at 566-71; State v. Jensen, 125 Wn. App. 319, 330, 104 P.3d 717 (2005).

[11] 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).

[12] Mickens, 535 U.S. at 173; see also State v. Chavez, 162 Wn. App. 431, 442, 257 P.3d 1114 (2011) (Korsmo, A.C.J., dissenting) (explaining that Mickens "clarified that only an actual conflict of interest that adversely affected counsel's performance violates the Sixth Amendment").

performance was significantly affected or in any other way render the verdict less reliable.[13] Likewise, a court's awareness of and inquiry into a conflict does not alter the likelihood that the conflict affected counsel's performance. We note that Mickens addressed a concern about incentivizing courts to make an appropriate inquiry.[14] In a dissent, Justice Souter observed that the majority's decision in Mickens eliminated any sanction for failure to inquire.[15] But the majority declined to presume that trial judges needed more incentive to follow the law.[16] It also observed that the presumption of prejudice once a defendant shows an effect upon representation offers some incentive to inquire into the matter and replace a conflicted attorney if necessary in order to avoid reversal.[17] Following Mickens, we decline Key's invitation to apply a different test when the defendant raises a conflict issue and the court inquires into it.

Thus, to establish a Sixth Amendment violation, Key must show the existence of a conflict and an adverse effect on Montoya's performance. Key claims Montoya had a conflict under RPC 1.7 and RPC 1.9. Under RPC 1.7(a)(2), a conflict exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to

---

[13] Mickens, 535 U.S. at 173.
[14] Mickens, 535 U.S. at 173.
[15] Mickens, 535 U.S. at 206-07.
[16] Mickens, 535 U.S. at 173.
[17] Mickens, 535 U.S. at 173.

another client, a former client or a third person or by a personal interest of the lawyer." RPC 1.9(a) and (b) prohibit a lawyer from representing a client in a matter substantially related to a matter in which the lawyer or the lawyer's firm has represented a former client unless the former client gives written consent.

Facts matter. Here, the facts presented to the trial court do not show a significant risk that Montoya's former representation of Giddings materially limited his representation of Key. The trial court received this evidence: First, when asked, Montoya could not identify any way that his prior representation of Giddings would limit his ability to represent Key.

> THE COURT: So, Mr. Montoya, do you believe that your representation of Mr. Key in this case would be materially limited by your responsibilities to your former client, Donald Giddings, and bear in mind Mr. Giddings' comments here?
>
> MR. MONTOYA: It would not, Your Honor.

Montoya also represented that he could not identify any way to use information gained from his prior representation of Giddings.

> THE COURT: So are you reasonably sure, Mr. Montoya, that you would not be in any way required to use information relating to your representation of Donald Giddings in a prior matter in order to properly represent Mr. Key?
>
> MR. MONTOYA: No, Your Honor. And as I previously noted, I have no recollection of the case whatsoever. Even after looking at the court docket, I have no recollection of the case at all.

Montoya answered as an officer of the court. The trial court could properly rely on his statements.

Key's independent counsel on the conflict issue, Margot Carter, also told the court that she could not identify any conflict of interest.

> THE COURT: So you cannot identify, as I understand it, any actual conflict of interest or any conflict that would adversely affect Mr. Montoya's performance on behalf of Mr. Key in this case; is that right?
>
> MS. CARTER: Your Honor, what I would say is that I have very limited knowledge of the specifics and I was, as I understood it, appointed to explain to him what his options were and what the conflict was in general terms, but based on what I've heard today, I haven't been able to identify any.
>
> THE COURT: So just to be clear, you haven't been able to identify any actual conflict of interest on the part of Mr. Montoya; is that right?
>
> MS. CARTER: That is correct.
>
> THE COURT: And you haven't been able to identify any conflict that adversely affects Mr. Montoya's performance on behalf of Mr. Key; is that right?
>
> MS. CARTER: From the limited amount of knowledge I have, yes.

Key could not identify disqualifying conflict either. The court asked Key directly if he could identify any actual conflict of interest that would adversely affect Montoya's performance.

> THE COURT: Okay, Mr. Key, I want to give you an opportunity to identify any actual conflict of interest that you think

exists in Mr. Montoya representing you in this case. Do you have anything to say about that?

DEFENDANT: No, sir.

THE COURT: Is there anything you'd like to tell the Court about any possible conflict that would adversely affect your attorney's performance in this case?

THE DEFENDANT: No, sir.

From this inquiry, the experienced trial court judge properly determined that no actual conflict existed that required appointing Key new counsel. No one could identify any conflict based on Montoya's previous representation of Giddings. And Key acknowledges that Montoya remembered nothing about the prior case.

As for RPC 1.9, the former client, Giddings, gave his written consent to the representation, satisfying the conditions of the rule. Key argues that because Giddings never waived his attorney-client privilege, Montoya's performance was limited. But Montoya maintained that he could not recall any details of his representation of Giddings. The court had no reason to find a conflict when no facts supported it.

Key claims this case is like State v. Stenger.[18] There, the court disqualified a prosecuting attorney from prosecuting an aggravated murder charge because the attorney had previously represented the defendant in a

---

[18] 111 Wn.2d 516, 518, 521-22, 760 P.2d 357 (1988).

misdemeanor assault case.  But we distinguish Stenger.  In Stenger, the prosecuting attorney's earlier representation of the defendant was "closely interwoven" with the aggravated murder prosecution case because information obtained in that representation, "including information about the defendant's background and earlier criminal and antisocial conduct," could influence the prosecuting attorney's exercise of discretion in seeking the death penalty.[19] Here, Key identifies no information about Montoya's representation of Giddings that could have disadvantaged Key.  Key claims that Giddings' reputation for violence or prior acts of violence could be relevant to a claim of self-defense.[20] But unlike in Stenger, where the knowledge obtained in the prior representation might have influenced the prosecuting attorney in seeking the death penalty, Key does not show how Montoya's potential knowledge of these facts could have affected his representation of Key.

The record here does not show more than a theoretical conflict, which is not enough to justify reversal.[21]  Key's claim that a conflict deprived him of effective counsel fails.

---

[19] Stenger, 111 Wn.2d at 521-22.
[20] See ER 404(a)(2).
[21] Mickens, 535 U.S. at 171.

-10-

## Public Trial Right

Next, Key contends that the trial court violated his right to a public trial with an unrecorded sidebar conference during voir dire. We disagree.

Both our state and federal constitutions guarantee defendants the right to a public trial.[22] But this right is not absolute.[23] Not all interactions between the court, counsel, and defendants implicate the public trial right.[24] Washington courts follow a three-step analysis to determine whether a violation of the right to a public trial has occurred.[25] The court asks (1) whether the public trial right attaches to the proceeding at issue, (2) whether the courtroom was closed, and (3) whether closure was justified.[26] Whether the trial court has violated the defendant's public trial right is a question of law that this court reviews de novo.[27]

The Washington Supreme Court has adopted the experience and logic test to determine if a particular proceeding implicates the public trial right.[28] Under the experience prong, courts ask "whether the place and process have historically been open to the press and general public.'"[29] Under the logic prong,

---

[22] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.
[23] State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).
[24] State v. Slert, 181 Wn.2d 598, 603, 334 P.3d 1088 (2014).
[25] State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015).
[26] Love, 183 Wn.2d at 605.
[27] State v. Brightman, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).
[28] State v. Smith, 181 Wn.2d 508, 511, 334 P.3d 1049 (2014).
[29] Smith, 181 Wn.2d at 514 (internal quotation marks omitted) (quoting State v. Sublett, 176 Wn.2d 58, 73, 292 P.3d 715 (2012) (plurality opinion))).

courts ask "whether public access plays a significant positive role in the functioning of the particular process in question."[30] If the public trial right attaches, then the trial court must apply the five factors from State v. Bone-Club[31] before the trial court can close any part of a trial to the public.[32]

Key contends that the sidebar that occurred during voir dire was an improper courtroom closure. Generally, sidebars do not implicate the public trial right because they have historically been closed to the public and public access plays no positive role in the proceeding.[33] Proper sidebars "deal with mundane issues implicating little public interest."[34] Thus, under the experience and logic test, sidebars do not usually implicate the public trial right.[35]

Key contends that this sidebar was unusual and implicates the public trial right. "'[T]he party presenting an issue for review has the burden of providing an adequate record to establish such error.'"[36] Here, Key has not shown that this was an untraditional sidebar. He merely cites the portion of the record showing the sidebar occurred. In this case, the sidebar took place during voir dire, after the attorneys questioned prospective jurors and before for-cause challenges.

---

[30] Smith, 181 Wn.2d at 514 (citing Sublett, 176 Wn.2d at 73).
[31] 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).
[32] Sublett, 176 Wn.2d at 73.
[33] Smith, 181 Wn.2d at 511.
[34] Smith, 181 Wn.2d at 516.
[35] Smith, 181 Wn.2d at 516.
[36] Slert, 181 Wn. 2d at 608 (quoting State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012)).

The record shows that immediately after the sidebar the court took a short recess. This strongly suggests that the sidebar discussion was about taking a recess. Key has presented no evidence that the court and counsel discussed anything else. Because "scheduling matters" are exactly the type of subject intended for sidebar discussions, the conference was a traditional sidebar and does not implicate Key's public trial right.[37]

Key contends that because the trial court never memorialized the sidebar, his right to a public trial was violated. "To avoid implicating the public trial right, sidebars ... must either be on the record or be promptly memorialized in the record."[38] But this does not relieve Key of his burden to prove that the sidebar implicated his public trial right. In State v. Crowder,[39] a Division Three case, the appellant argued that an unrecorded sidebar violated his right to a public trial. The court stated, "Crowder's public trial argument would have traction only if he could show something substantive occurred during the off-the-record sidebar."[40] Crowder failed to prove that the sidebar in his case was outside of the general rule.[41] The same is true here. Although the trial court did not memorialize the

---

[37] State v. Whitlock, 188 Wn.2d 511, 513-14, 396 P.3d 310 (2017) ("Typical examples of such mundane issues are scheduling, housekeeping, and decorum.").

[38] Smith, 181 Wn.2d at 516 n.10; see also Whitlock, 188 Wn.2d at 522.

[39] 196 Wn. App. 861, 867, 385 P.3d 275 (2016), review denied, 188 Wn.2d 1003 (2017).

[40] Crowder, 196 Wn. App. at 867.

[41] Crowder, 196 Wn. App. at 867.

sidebar, Key has not shown that anything substantive occurred implicating his right to a public trial.

### Offender Score

Key contends that the State failed to prove the comparability of his out-of-state convictions and seeks review of his offender score. In calculating Key's offender score, the trial court used five out-of-state convictions, two from Wisconsin, two from California, and one from Florida. The State concedes that it presented insufficient evidence of these prior convictions for the court to include them in Key's offender score. We agree.

Under the Sentence Reform Act of 1981 (SRA),[42] a defendant's offender score may include out-of-state convictions if the out-of-state offense is comparable to a Washington offense.[43] An out-of-state offense must be classified according to the comparable definitions and sentences provided by Washington law.[44] "The State bears the burden of proving the existence and comparability of all out-of-state convictions."[45]

The State did not produce evidence to establish the existence of the Wisconsin and Florida convictions. The record contains no evidence of either Wisconsin conviction. For the Florida conviction, the record does contain

---

[42] Ch. 9.94A RCW.
[43] RCW 9.94A.525(3).
[44] RCW 9.94A.525(3).
[45] State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

judgment and sentence documents from Florida. But neither evidences the convictions used in Key's criminal history. The Florida offense described in the judgment and sentence in this case states that Key was sentenced on February 15, 2008, for "Dealing in Stolen Property." The documents in the record, however, related to convictions for "Petit Theft-Retail" with an August 4, 2008, disposition date, and "Fraud Use of Credit Cards" with a disposition date of September 28, 2008. The State did not meet its burden to establish the existence of these prior convictions.

For the California convictions, the State did not prove comparability. The State introduced documents to show the existence of the California convictions but offered no argument below or on appeal to show that they are comparable to Washington offenses. The trial court merely accepted the State's proffered criminal history. Thus, the State did not meet its burden to show that the California offenses were comparable to Washington offenses.

We accept the State's concession and remand to the trial court for resentencing. The SRA permits the parties to introduce evidence related to criminal history on remand.[46]

---

[46] RCW 9.94A.530(2).

Appellate Costs

Key asks this court to deny any award of appellate costs. But the State does not request appellate costs in its brief. And when, as here, a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[47] If the State has evidence to establish this change in circumstance, it may file a motion for costs with the commissioner.

## CONCLUSION

Because Key does not show his right to effective assistance of counsel and a public trial were violated, we affirm his conviction. Because the State failed to prove the existence and comparability of prior foreign convictions, however, we remand for resentencing.

_Leach, J._

WE CONCUR:

---

[47] RAP 14.2.