# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

THOMAS ALAN SVIKEL,

Appellant.

DIVISION ONE

No. 83649-8-I

UNPUBLISHED OPINION

DWYER, J. — Thomas Svikel appeals from the judgment entered on a jury's verdict finding him guilty of one count of rape of a child in the second degree and two counts of child molestation in the second degree. Svikel contends that the trial court committed an error of constitutional magnitude by not appointing new defense counsel upon his request. We disagree. Svikel further contends that one of the conditions of his community custody is unconstitutionally vague. We agree that the challenged condition is unconstitutionally vague as written and remand for the trial court to remove the challenged portion of the condition. We otherwise affirm Svikel's convictions and sentences.

I

In 2018, the State charged Svikel with two counts of rape of a child in the second degree and two counts of child molestation in the second degree for acts that Svikel allegedly committed against his daughter. Proceedings were continued multiple times due to concerns about Svikel's competency to stand trial

and Svikel's reluctance to proceed to trial while COVID-19 protocols were in place.

Trial was ultimately scheduled for Friday, December 3, 2021. On that day, Svikel appeared at a trial call hearing for his case to be assigned to a judge for trial. Seeking to avoid this outcome, defense counsel moved for a continuance so that trial could take place at a time when jurors would not need to wear masks. The trial court denied the motion. The court then announced that it was assigning the matter to Judge Anita Farris for trial. The following exchange then occurred:

> MR. SVIKEL: I have a problem. There is a conflict of interest.
> THE COURT: You need to come forward and identify yourself. Are you Mr. Svikel?
> MR. SVIKEL: Yes.
> THE COURT: [Defense counsel]? Do you wish to talk to Mr. Svikel for a moment?
> [DEFENSE COUNSEL]: No. I would always prefer that, but I know he doesn't want to talk to me.
> MR. SVIKEL: There is a conflict of interest. I need new counsel.
> THE COURT: What?
> MR. SVIKEL: There is a conflict of interest. I need new counsel.
> THE COURT: Oh. Okay. Why don't you outline what the conflict is that you see. By "conflict of interest," do you mean that he is representing you and yet also representing somebody who has an adverse --
> MR. SVIKEL: He is not representing my interests. He is not trying to defend me. He is protecting other people.
> THE COURT: Do you wish to tell me any further, or is that all you wish to tell me?
> MR. SVIKEL: Right now, yes.
> THE COURT: Well, that isn't enough for me to conclude anything at all.
> MR. SVIKEL: I'd prefer not to do it right now, please.
> THE COURT: I'm not making you do it, I'm just sending you out to trial. Your trial will be heard by Judge Farris.

MR. SVIKEL: I need new counsel. There's a conflict of interest.

THE COURT: But I can't find that you do --

MR. SVIKEL: I instructed him to do something, he didn't do it. When he told me why he didn't do it represents a problem.

THE COURT: I am not finding that there is a conflict of interest because I haven't the information necessary to make that decision.

MR. SVIKEL: In December -- you remember me in December, for trial call? Correct?

THE COURT: Uh-huh.

MR. SVIKEL: He said he was going to do interviews. That is not what I instructed him to do. I instructed him to do pretrial depositions.

THE COURT: Mr. Svikel, you're not in charge of your defense. You think you are, but you're not. [Defense counsel] is not a trained monkey who just dances for you. He's a trained lawyer. All right? So he is going to make those decisions. You don't get to decide how you get defended when you have an attorney.

MR. SVIKEL: He told me he didn't want them to go under cross-examination --

THE COURT: Sit down. Go and sit down.

MR. SVIKEL: That is a conflict of interest.

THE COURT: [Defense counsel], I will invite you again, if you wish, to talk to your client. I'm not saying you must, but you know I'm about to send this case out. That's what I'm about to do. So you can let me know if you'd like me to come back to it.

[DEFENSE COUNSEL]: I would be happy to talk to Mr. Svikel, but I just don't believe he's going to talk to me. That's been my experience the last few months.

THE COURT: Well, here is the reason why Mr. Svikel's issue is at loggerheads. Right now I don't have any basis to assign a new attorney, and that's why I'm not assigning a new attorney; therefore, I don't have any reason to continue this.

MR. SVIKEL: They're violating my right to a fair trial.

THE COURT: Please be quiet, sir. I'm not hearing from you. I'm telling you something.

I don't have a reason to continue the case at this point in time. You can talk to your attorney, or don't talk to your attorney, it makes no difference to me, but I'm assigning this case out right now. So if you want to talk to [defense counsel], you are free to do so. If you don't want to, then that will be your decision, sir.

Jury selection in Judge Farris's court began on Monday, December 6,

2021. At trial, Svikel's attorney brought on co-counsel to assist. Svikel did not

express dissatisfaction with either of his attorneys during the trial.

The jury convicted Svikel of one count of rape of a child in the second degree and two counts of child molestation in the second degree. Svikel was acquitted on the second count of rape of a child in the second degree.

Svikel was sentenced to an indeterminate sentence of incarceration of 136 months to life on count one and 41 months on counts three and four, to be served concurrently. As a condition of his community custody, Svikel was directed: "Do not date women or form relationships with families who have minor children, as directed by the supervising Community Corrections Officer."

Svikel appeals.

II

Svikel asserts that the trial court violated his Sixth Amendment right to the assistance of counsel by refusing to appoint a new attorney after Svikel declared that he had a "conflict of interest" with his current attorney on the date that his case was assigned to a judge for trial. The State, on the other hand, contends that the trial court did not abuse its discretion by finding that there was no conflict of interest justifying appointment of new counsel to Svikel. We agree with the State.

When determining whether the trial court erred by refusing to appoint new counsel, we consider "the extent of the conflict, the adequacy of the inquiry, the timeliness of the motion, and the effect of the conflict on the representation actually provided." State v. Thompson, 169 Wn. App. 436, 458, 290 P.3d 996 (2012); see also In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1

4

(2001) (Stenson II). Upon examining these factors, we will grant relief only if the trial court abused its discretion. State v. Lindsey, 177 Wn. App. 233, 248, 311 P.3d 61 (2013) (citing State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). An abuse of discretion occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds. Lindsey, 177 Wn. App. at 248-49 (citing State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

A

A criminal defendant may be deprived of the constitutional right to the assistance of counsel under the Sixth Amendment when the defendant has been completely denied counsel at a critical stage of the proceedings. United States v. Cronic, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). When there has been a complete breakdown in communication between the defendant and attorney, this is appropriately classified as a complete deprivation of counsel. Stenson II, 142 Wn.2d at 722 ("A defendant need not show prejudice when the breakdown of a relationship between attorney and defendant from irreconcilable differences results in the complete denial of counsel.").

As we recently held in State v. McCabe, No. 84635-3, slip op. at 6 (Wash. Ct. App. Jan. 30, 2023), https://www.courts.wa.gov./opinions/pdf/846353.pdf, an

5

attorney's failure to work with the defendant must be *complete* in order to establish that there has been a deprivation of counsel under Cronic. In the context of a breakdown in communication, this means that the defendant must demonstrate a "complete collapse" in the relationship with counsel; "mere lack of accord" will not suffice. Cross, 156 Wn.2d at 606. A conflict between appointed counsel and the defendant will only justify substitution "when counsel and defendant are so at odds as to *prevent* presentation of an *adequate defense*." State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (Stenson I) (emphasis added).

It necessarily follows that when counsel's representation results in an adequate defense having been presented, the defendant has not been completely deprived of his right to counsel.[1] Svikel makes no argument in his brief that his counsel was ineffective or otherwise provided subpar assistance. Furthermore, the record demonstrates that Svikel received adequate representation despite any conflict with his attorney. Defense counsel attempted to alleviate any personal disagreement between himself and Svikel by bringing on co-counsel to assist at trial. Svikel's two attorneys conducted extensive voir dire of the jury pool, argued a complicated motion in limine to exclude prior statements made by Svikel, presented opening and closing arguments, made objections, and cross-examined many of the witnesses. Svikel chose to testify on his own behalf, and counsel facilitated that decision by questioning him on the

---

[1] Appellate courts must "examine both the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client *actually* receives." Stenson II, 142 Wn.2d at 724 (emphasis added).

stand.  Svikel expressed no dissatisfaction with his attorneys either during or after the trial.  Finally, counsel was able to obtain an acquittal on one of the charges against Svikel.

"The essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Stenson II, 142 Wn.2d at 725-26 (citing Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)).  The record here establishes that this guarantee was met.  Accordingly, Svikel was not deprived of his right to counsel.

B

We next clarify the nature of the December 3, 2021 hearing.  Svikel's appellate presentation demonstrates a lack of understanding of the purpose of the hearing.  In his brief, Svikel states that

> when a motion is made relatively late—even on the day of trial, which was not the case here—the court must carefully weigh the potential inconvenience and delay against the critical constitutional right of the accused to the assistance of counsel.

Br. of Appellant at 18.

Contrary to Svikel's assertion, December 3 was actually the "day of trial."  Trial commences when the court calls the case and hears preliminary motions.  State v. Carlyle, 84 Wn. App. 33, 36, 925 P.2d 635 (1996).  In State v. Carson, our Supreme Court held that trial commenced when the case was called for trial and the court considered and denied defendant's motion for a continuance.  128 Wn.2d 805, 820, 912 P.2d 1016 (1996), abrogated on other grounds by State v.

7

Walker, 199 Wn.2d 796, 513 P.3d 111 (2022). This is precisely what occurred here. Svikel's case was scheduled for trial on December 3, 2021, and the court considered and denied his motion for a continuance on that day. Thus, Svikel's motion for new counsel was made *on* the first day of trial, not before.

Moreover, the court on the date of the trial assignment would have been unable to conduct the sort of searching inquiry that Svikel contends was required.[2] In larger counties such as Snohomish, the superior court will frequently have numerous cases set for trial on the same day. The purpose of the trial assignment hearing is to prioritize those cases which must be heard first and assign them to available judges. As such, trial assignment hearings typically involve a multitude of parties and their attorneys. These hearings also will typically have multiple defendants present who are in custody and, thus, who must be escorted to and from the courtroom any time the court recesses. As a practical matter, the court is simply unable to devote a significant amount of time to any one particular case.

In order for the trial court to conduct the searching inquiry that Svikel

---

[2] Appellant's assertion is that the judge failed in his duty because he did not accommodate Svikel's concern in the following manner:

> when an indigent defendant moves for new counsel, the trial court must make a "penetrating and comprehensive examination" into the reasons for the defendant's dissatisfaction. State v. Dougherty, 33 Wn. App. 466, 471, 655 P.2d 1187 (1982). "An adequate inquiry must include a full airing of the concerns (which may be done in camera) and a meaningful inquiry by the trial court." Cross, 156 Wn.2d at 610. In the case of a breakdown in communication, a private, in-depth hearing is typically "crucial" for the trial court to be able to "determine whether an attorney-client conflict rises to the level of a 'total breakdown in communication' or instead whether the conflict is insubstantial or a mere 'disagreement about trial strategy [that] does not require substitution of counsel.'" (citations omitted).

Brief of Appellant at 14-15. If Svikel is correct that this is what was required of the judge, then Svikel's request was plainly untimely.

claims was required, the court would necessarily have needed to continue the trial. However, the trial court had already denied Svikel's motion for a continuance. Trial courts have wide latitude when balancing the defendant's right to counsel with the timing of proceedings. Cf. State v. Hampton, 184 Wn.2d 656, 668, 361 P.3d 734 (2015) (courts have wide latitude when balancing defendant's right to private counsel of choice with demands of court calendar). Indeed, here the parties had agreed that the case was ready to be tried 10 months prior to Svikel's request for new counsel. The only remaining impediment to trial was Svikel's reluctance to proceed while the Snohomish County Health Department's mask mandate remained in place. The trial court's decision to cease granting continuances in order to ensure that a trial occurred was reasonable in light of the circumstances. Svikel's last minute request for new counsel did not entitle him to further continuances.

C

Given the nature of the hearing at which Svikel made his request for new counsel, the inquiry conducted by the trial court was adequate. "[A] trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully." State v. Schaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). Factors that the court may consider when conducting an inquiry include "'the depth of any conflict between defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to prepare, and any delay or inconvenience that may result from substitution.'" Thompson, 169 Wn. App. at 462 (quoting United States v. Adelzo–

Gonzalez, 268 F.3d 772, 777 (9th Cir. 2001)).  However, a formal inquiry is not required where the defendant has stated his reasons for seeking new counsel on the record.  Schaller, 143 Wn. App. at 271.

Svikel's reason for seeking new counsel was clear.  Svikel first asked for new counsel by claiming that there was a "conflict of interest."  The trial court asked Svikel several times to state precisely what he believed to be his conflict with counsel.  Though initially reluctant to provide an answer, Svikel eventually explained that he wanted to conduct depositions of the witnesses, which his attorney would not do.  As the record indicates, Svikel made his request on the day of trial assignment after his request for a continuance was denied.  Appointing new counsel would have created a significant delay, as no new attorney could possibly have adequately prepared for trial over the span of a single weekend.  See Thompson, 169 Wn. App. at 462 (no formal inquiry into preparation time and delay required when evident from the circumstances).

Contrary to Svikel's assertion, the trial court was not required to conduct an inquiry sua sponte to determine whether other reasons might then exist that supported the defendant's desire for new counsel.  Any inquiry initiated by the trial court may well pressure the defendant into revealing information about the relationship between defendant and counsel.  This, in turn, might in some cases reveal the substance of communications between them.  Courts should be loathe to probe into the relationship between attorney and client, as "[i]ntrusion into private attorney-client communications violates a defendant's right to effective representation and due process."  State v. Garza, 99 Wn. App. 291, 296, 994

P.2d 868 (2000) (citing <u>State v. Cory</u>, 62 Wn.2d 371, 374-75, 382 P.2d 1019 (1963)).

As the trial court was sufficiently apprised of Svikel's reasons for seeking new counsel, further inquiry was not required.

D

Furthermore, the trial court did not abuse its discretion in concluding that there was no conflict of interest that justified substitution of counsel on the first day of trial.

Svikel requested a new attorney due to what he deemed a "conflict of interest." However, "a conflict over strategy is not the same thing as a conflict of interest." <u>Cross</u>, 156 Wn.2d at 607; <u>see also</u> <u>Stenson</u> II, 142 Wn.2d at 722 ("Case law does not support the application of the concept of a conflict of interest to conflicts between an attorney and client over trial strategy."). Instead, a "conflict of interest" is a division of loyalties that adversely affects counsel's performance. <u>Mickens v. Taylor</u>, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). Examples of a conflict of interest that necessitate the appointment of new counsel include counsel's representation of co-defendants with incompatible defenses, <u>State v. Robinson</u>, 79 Wn. App. 386, 398, 902 P.2d 652 (1995); counsel taking the stand to testify against the defendant, <u>State v. Harell</u>, 80 Wn. App. 802, 805, 911 P.2d 1034 (1996); counsel's possession of exculpatory information that cannot be disclosed due to ongoing duties to former clients, <u>State v. Kitt</u>, 9 Wn. App. 2d 235, 246-47, 442 P.3d 1280 (2019); defense counsel's own criminal charges impeding the ability to represent the defendant,

State v. Jensen, 125 Wn. App. 319, 333-34, 104 P.3d 717 (2005); and counsel's supervisory role over an attorney called as a witness by the State, State v. O'Neil, 198 Wn. App. 537, 545, 393 P.3d 1238 (2017).

Svikel asserted no such conflict of interest. When Svikel was asked to explain what he believed to be his counsel's conflict of interest, Svikel explained that his counsel conducted interviews of witnesses rather than taking their depositions as he had requested. This was a disagreement over trial strategy, not a conflict of interest. "Until and unless the disagreement about strategy actually compromises the attorney's ability to provide adequate representation, strategy differences do not violate any constitutional rights held by defendants." Cross, 156 Wn.2d at 611.

We therefore analyze whether Svikel proved that there was a breakdown in his relationship with counsel to such an extent that he was completely denied counsel under the Sixth Amendment. In Stenson II, the petitioner alleged that there had been a complete breakdown in his relationship with counsel. The alleged cause of the breakdown was the petitioner's desire to blame the victim's wife for the crimes he was charged with committing. Stenson II, 142 Wn.2d at 727. The petitioner's attorneys refused to adopt this strategy and instead decided to focus more on the penalty phase of the trial.[3] Stenson II, 142 Wn.2d at 726-27. Despite this disagreement, Stenson's attorneys actively participated

---

[3] As the court noted, counsel had good reason not to pursue the petitioner's strategy, as doing so could have increased the likelihood that the jury would impose the death penalty if it found the petitioner guilty. Stenson II, 142 Wn.2d at 727. Moreover, as the court noted in Stenson's direct appeal, evidence that places the blame for the charged offenses on another individual has strict requirements for admissibility. Stenson I, 132 Wn.2d at 732.

in the guilt phase of the trial, cross-examining 25 witnesses and calling 5 witnesses on the petitioner's behalf. Stenson II, 142 Wn.2d at 730. Given the active role counsel played in representing the petitioner at trial, the Supreme Court held that "the effects of any breakdown in communication on attorney performance seem negligible." Stenson II, 142 Wn.2d at 729. The court further held that given counsel's twice weekly visits with the petitioner, any breakdown was not "tantamount to a total lack of communication" that would warrant the appointment of new counsel. Stenson II, 142 Wn.2d at 730.

Svikel's disagreement with his counsel is akin to the disagreement in Stenson. Svikel's assertion of a "conflict of interest" arose from a disagreement about trial strategy. Like the attorneys in Stenson, Svikel's counsel had a good reason not to pursue Svikel's preferred strategy, as deposing the witnesses might have made their testimony admissible in the event that the witnesses were unable to appear at trial. See Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Furthermore, contrary to Svikel's assertions, there was not a "total lack of communication" between him and his counsel. When the trial court indicated that it did not have the information necessary to find a conflict of interest, Svikel told the court that his attorney "said he was going to do interviews" and that his counsel "told me he didn't want them to go under cross-examination." Svikel's counsel informed the court that he "would be happy to talk to Mr. Svikel, but I just don't believe he's going to talk to me." These responses indicate that Svikel and his counsel were in communication with each other, but that Svikel did not like

13

what his attorney had to say. "It is well settled that a defendant is not entitled to demand a reassignment of counsel on the basis of a breakdown in communications where he simply refuses to cooperate with his attorneys." Schaller, 143 Wn. App. at 271 (citing Harding v. Davis, 878 F.2d 1341, 1344 n.2 (11th Cir. 1989)). Svikel's refusal to listen to counsel's advice does not constitute a complete breakdown in communication.

Finally, as in Stenson, any discord between Svikel and his counsel did not prevent Svikel from receiving an adequate defense. As previously discussed, Svikel's attorneys actively represented Svikel throughout the trial and at sentencing. Moreover, Svikel does not raise any argument that his counsel was ineffective. Because there was no total breakdown in communication that prevented Svikel from receiving an adequate defense, Svikel was not constitutionally entitled to new counsel on the first day of trial. The trial court did not abuse its discretion.

III

Svikel asserts that the trial court erred by ordering a condition of community custody prohibiting him from "form[ing] relationships with families who have minor children, as directed by the supervising Community Corrections Officer." This is so, he asserts, because the condition is unconstitutionally vague. We agree.

We review the imposition of community custody conditions for an abuse of discretion. State v. Hai Minh Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). "A trial court necessarily abuses its discretion if it imposes an unconstitutional

community custody condition, and we review constitutional questions de novo." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

The due process guarantees of both the state and federal constitutions require that defendants be given fair warning of proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008); see also U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. In terms of community custody conditions imposed at sentencing, a condition is unconstitutionally vague if it: "'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" Bahl, 164 Wn.2d at 752-53 (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). Disputed terms should be read in context, and "[i]f persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." Douglass, 115 Wn.2d at 179.

In Hai Minh Nguyen, our Supreme Court considered whether the term "dating relationship" was unconstitutionally vague in a community custody condition. 191 Wn.2d at 682-83. The court noted, "[a] 'relationship' is defined as 'a state of affairs existing between those having relations.'" Hai Minh Nguyen, 191 Wn.2d at 682 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1916 (2002)). The court held that using this definition with the objective modifier "dating," a person of ordinary intelligence could distinguish a "dating relationship" from other types of relationships, and therefore the term "dating relationship" was

15

not unconstitutionally vague.  Hai Minh Nguyen, 191 Wn.2d at 682.

In contrast, Division Two held in an unpublished opinion that a community custody condition prohibiting "form[ing] relationships with families who have minor children" was unconstitutionally vague because it "permit[ted] arbitrary enforcement by granting corrections officers broad discretion to determine when an encounter between [the defendant] and another individual has crossed the obscure threshold of forming a relationship." State v. Robinett, No. 50653-0-II, slip op. at 9 (Wash. Ct. App. Jan. 15, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf506530.pdf.  This court has similarly held, in an unpublished opinion, that a condition prohibiting the defendant from "form[ing] relationships with families who have minor children" is unconstitutionally vague, as it "provides no guidance about when routine, friendly interactions between [the defendant] and a person or family with minor children slips from a mere passing acquaintance into a 'relationship.'" In re Matter of Ansell, No. 82506-2-I, slip op. at 17 (Wash. Ct. App. Jan. 18, 2022) (unpublished), http://www.courts.wa.gov/opinions/pdf825062.pdf; see also State v. Martinez Zavala, No. 80817-6-I, slip op. at 9-10 (Wash. Ct. App. April 26, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf808176/pdf.  Without an objective qualifier for the type of relationship with a family, the community custody condition does not provide sufficiently ascertainable standards such that Svikel could understand what is prohibited, nor does it protect Svikel from arbitrary enforcement.  As a result, the condition prohibiting relationships with families with minor children is unconstitutionally vague.  Accordingly, we remand

16

this matter to the trial court to strike that portion of the community custody condition.

We affirm Svikel's convictions but remand this matter to the trial court to strike "relationships with families who have minor children" from Community Custody Condition 8.

Affirmed in part, reversed in part, and remanded.

_____
Dwyer, J.

WE CONCUR:

_____   _____
Coburn, J.