2015 SEP 14 AM 9: 2_



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| FOSS MARITIME COMPANY, | ) | No. 71611-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFF BRANDEWIEDE and | ) | |
| JANE DOE BRANDEWIEDE and the | ) | |
| marital community comprised thereof; | ) | |
| BRANDEWIEDE CONSTRUCTION, | ) | |
| INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| CORE LOGISTIC SERVICES; LISA | ) | |
| LONG and JOHN DOE LONG and the | ) | |
| marital community comprised thereof; | ) | |
| FRANK GAN and JANE DOE GAN and | ) | PUBLISHED OPINION |
| the marital community comprised | ) | |
| thereof, | ) | FILED:  September 14, 2015 |
| | ) | |
| Defendants. | ) | |
| | ) | |

VERELLEN, A.C.J. — Disqualification of counsel is a drastic sanction, only to be imposed in compelling circumstances because it "exacts a harsh penalty from the parties as well as punishing counsel."[1]  The trial court here disqualified Jeff Brandewiede's counsel for accessing and reviewing an opponent's privileged communications.  But the trial court failed to consider on the record the principles and

---

[1] In re Firestorm 1991, 129 Wn.2d 130, 140, 916 P.2d 411 (1996).

guidelines of In re Firestorm 1991[2] and Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.[3] regarding (1) prejudice, (2) counsel's fault, (3) counsel's knowledge of privileged information, and (4) possible lesser sanctions. We reverse the trial court's disqualification order and remand for further proceedings consistent with this opinion.

## FACTS

This case arose from a contract dispute for the renovation of the vessel Alucia. Foss Maritime subcontracted with Core Logistic Services to do the work. A key question in the underlying dispute is whether Jeff Brandewiede and Brandewiede Construction, Inc. were affiliated with Core Logistic Services or were an independent contractor.

Foss terminated Van Vorwerk, the project manager, in May 2012. In July 2012, Foss sued Core Logistic Services and Brandewiede for breach of contract, unjust enrichment, and fraud. During discovery, Foss identified Vorwerk as a person "likely to have discoverable information" and "who prepared, assisted with, or furnished information" used to prepare Foss's discovery response.[4] Foss did not indicate that Vorwerk was no longer employed by Foss. Foss listed Vorwerk as a potential witness and identified his contact information as in care of Foss's counsel.

In September 2013, Brandewiede's counsel John Welch contacted Foss's counsel John Crosetto about setting Vorwerk's deposition. Crosetto explained that

---

[2] 129 Wn.2d 130, 916 P.2d 411 (1996).

[3] 122 Wn.2d 299, 858 P.2d 1054 (1993).

[4] Clerk's Papers (CP) at 135.

Vorwerk no longer worked for Foss and gave Welch contact information for Vorwerk. In late September 2013, Welch met Vorwerk for an interview "in lieu of sitting for a deposition."[5] Foss agrees the interview itself was proper.

During the interview, Vorwerk gave Welch a copy of a "wrongful termination" letter that Vorwerk drafted and gave to Foss after his employment was terminated. Vorwerk's letter recited facts about his work on the project. The letter included several e-mails between Vorwerk, Foss's in-house counsel Frank Williamson, and several other Foss employees. The e-mails were not designated as attorney-client privileged communications but did contain some privileged information. Brandewiede later identified the letter as a proposed trial exhibit. At the interview, Vorwerk offered to provide copies of his other e-mails with Foss management about the project.

In late October 2013, Welch again met with Vorwerk. Vorwerk gave Welch a thumb drive containing e-mails about all of his work as a project manager for Foss.

About two weeks later, Welch informed Crosetto of the materials he received from Vorwerk, stating he had "only reviewed a portion" of them.[6] The record is unclear how much Welch reviewed. In his declaration, Welch stated he became aware that the termination letter contained "potential attorney-client communications" when Crosetto alerted him.[7] Once Crosetto asserted that the thumb drive contained privileged information, Welch stopped further review.

---

[5] CP at 114.

[6] CP at 200.

[7] CP at 116.

Crosetto was concerned that Vorwerk had provided Welch with privileged information. On November 12, 2014, Crosetto requested that Brandewiede give Foss "all documents provided by Mr. Vorwerk."[8] Three days later, Welch gave Crosetto the thumb drive. Although Welch claims he stopped any further review of Vorwerk's materials on November 12, 2013, he e-mailed Crosetto on November 22, 2013, stating that he wanted to read Vorwerk's termination letter again.

On November 22, 2013, Foss filed a motion to disqualify Welch and his firm. Foss argued that Vorwerk's materials contained privileged information and that Welch's possession and use of the documents prejudiced Foss in violation of both RPC 4.2 and 4.4(a). Foss also sought a CR 26(b) discovery sanction excluding all evidence "tainted" by Vorwerk's and Welch's "wrongful conduct."[9]

The trial court heard the parties' argument on Foss's motion to disqualify counsel and for sanctions.[10] Foss filed the allegedly privileged documents under seal with a privilege log per the trial court's order.

The trial court reviewed the documents in camera and issued an order disqualifying Welch and his firm. The trial court determined that "Brandewiede's counsel did not address case law cited in [Foss's] brief and that "some (but not all) documents he reviewed were clearly attorney-client communications."[11] The trial court also excluded evidence "tainted" by Welch's "wrongful conduct," including

---

[8] CP at 82.

[9] CP at 45.

[10] While not at issue on appeal, both parties filed motions for CR 37 discovery sanctions. The trial court denied both parties' motions.

[11] CP at 277.

Vorwerk's letter, the thumb drive, and any further information containing or derived from privileged information belonging to Foss that might be in Brandewiede's, his counsel's, or Vorwerk's possession, unless Brandewiede obtained the information from a source "untainted by the wrongful conduct."[12] The trial court neither identified what conduct was wrongful nor made findings or entered conclusions identifying what discovery or ethical rules were violated.

Brandewiede sought discretionary review of the trial court's order disqualifying counsel and excluding evidence. This court granted discretionary review and a temporary stay.

## ANALYSIS

We generally review a disqualification order for an abuse of discretion.[13] But to the extent this case involves questions of law regarding "the application of a court rule to a set of particular facts,"[14] and "whether an attorney's conduct violates the relevant Rules of Professional Conduct,"[15] our review is de novo.[16]

### Burnet

Brandewiede contends the trial court erred in not conducting an on-the-record analysis of the Burnet v. Spokane Ambulance factors before disqualifying his counsel

---

[12] CP at 277.

[13] Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wn.2d 789, 812, 881 P.2d 1020 (1994); State v. Schmitt, 124 Wn. App. 662, 666, 102 P.3d 856 (2004).

[14] Firestorm, 129 Wn.2d at 135.

[15] Eriks v. Denver, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992).

[16] Firestorm, 129 Wn.2d at 135; Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014).

and excluding evidence.[17]  Specifically, Brandewiede contends Burnet and its progeny apply not only to discovery sanctions under CR 37(b) but also to discovery sanctions based on a CR 26(b) violation.  We disagree.

CR 26(b)(1) limits the scope of discovery, allowing for discovery of anything material and relevant to the litigation except for privileged matters.[18]  CR 26(b)(6) also imposes obligations on attorneys who receive information an opposing party claims is privileged:

> If information produced in discovery is subject to a claim of privilege . . . , the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the party disclosed it before being notified.  Either party may promptly present the information in camera to the court for a determination of the claim.  The producing party must preserve the information until the claim is resolved.

The trial court here neither made findings nor entered conclusions as to whether any discovery or ethical rules were violated.  The trial court determined Vorwerk's and Welch's conduct was wrongful but did not state what conduct was wrongful and whether that conduct violated any rules.

Burnet and its progeny constrain a trial court's discretion to order "dismissal, default, and the exclusion of testimony" as a CR 37(b)(2) discovery sanction.[19]  In Burnet, the trial court imposed a protective order limiting discovery under

---

[17] 131 Wn.2d 484, 933 P.2d 1036 (1997).

[18] Dana v. Piper, 173 Wn. App. 761, 770, 295 P.3d 305 (2013).

[19] Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 690, 132 P.3d 115 (2006); see also Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2013).

CR 37(b)(2)(B).[20] Burnet specifically involved a CR 26(f) violation, which triggered sanctions under CR 37(b)(2). Burnet held that before imposing "'one of the harsher remedies allowable under CR 37(b),'" the trial court must consider on the record (1) whether a lesser sanction would probably suffice, (2) whether the violation at issue was willful or deliberate, and (3) whether the violation substantially prejudiced the opposing party's ability to prepare for trial.[21]

Mayer v. Sto Industries, Inc. held that a trial court need not apply the Burnet factors when imposing lesser sanctions, e.g., monetary sanctions, but must do so when imposing severe sanctions under CR 37(b).[22] Mayer refused to apply Burnet to a CR 26(g) violation because Fisons governed CR 26(g) violations, and Burnet is limited to CR 37(b)(2) violations.[23] CR 37(b)(2) does not list disqualification of counsel as a sanction.

Washington courts have applied Burnet to a trial court's orders excluding witnesses,[24] dismissing claims,[25] and granting a default judgment.[26] But "nothing in

---

[20] Burnet, 131 Wn.2d at 490-91.

[21] Id. at 494 (quoting Snedigar v. Hodderson, 53 Wn. App. 476, 487, 768 P.2d 1 (1989)).

[22] 156 Wn.2d 677, 688-90, 132 P.3d 115 (2006) (concluding that Burnet's reference to "'harsher remedies allowable under CR 37(b)'" applies to "sanctions that affect a party's ability to present its case." (quoting Burnet, 131 Wn.2d at 494)).

[23] Id.; Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc., 168 Wn. App. 710, 716, 282 P.3d 1107 (2012).

[24] Jones, 179 Wn.2d at 335-37; Teter v. Deck, 174 Wn.2d 207, 212, 274 P.3d 336 (2012); Blair v. TA-Seattle E. No. 176, 171 Wn.2d 342, 346, 254 P.3d 797 (2011) (Blair II); In re Dependency of M.P., 185 Wn. App. 108, 114-18, 340 P.3d 908 (2014).

[25] Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 683, 41 P.3d 1175 (2002) (dismissing claims for violating discovery orders).

Burnet suggests that trial courts must go through the Burnet factors every time they impose sanctions for discovery abuses."[27] And no case law suggests that a trial court must apply Burnet for discovery sanctions based on a CR 26(b) violation. Burnet is limited to CR 37(b)(2) sanctions. Although some similar concerns apply to a disqualification of counsel, we conclude that Burnet does not apply here.

### Firestorm and Fisons

Firestorm and Fisons define the standard for disqualification of counsel here. Fisons established the principles that trial courts must follow in imposing discovery sanctions for CR 26(b) violations.[28] Firestorm expressly addressed disqualification.[29] When disqualifying counsel based on access to privileged information, we conclude a trial court must consider (1) prejudice; (2) counsel's fault; (3) counsel's knowledge of claim of privilege; and (4) possible lesser sanctions.[30]

*Prejudice.* In many discovery disputes, prejudice focuses upon the opposing party's ability to prepare for trial when improperly denied discovery.[31] But for purposes of disqualification of counsel for access to privileged information, prejudice

---

[26] Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 581-82, 220 P.3d 191 (2009) (ordering default judgment for discovery violations); Smith v. Behr Process Corp., 113 Wn. App. 306, 315, 54 P.3d 665 (2002) (same).

[27] Mayer, 156 Wn.2d at 688.

[28] Firestorm, 129 Wn.2d at 142 (citing Fisons, 122 Wn.2d at 355-56).

[29] Id. at 139-45.

[30] Foss contends we should adopt the six-factor test enunciated by the Texas Supreme Court to determine whether an attorney's receipt of privileged information merits disqualification. In re Meador, 968 S.W.2d 346, 351-52 (Tex. 1998). Although several concepts in the Meador test overlap with our four factors, we decline to adopt Meador here.

[31] See, e.g., Magaña, 167 Wn.2d at 588-90.

turns on the significance and materiality of the privileged information to the underlying litigation. Access to inconsequential information does not support disqualification, but review of information material to the underlying litigation weighs in favor of disqualification.[32]

*Fault.* Counsel's access to privileged information may range from an innocuous, inadvertent disclosure by the opposing party to serious ethics violations. The level of fault or misconduct by counsel is an important factor in deciding whether disqualification is appropriate.[33] A trial court may also consider the "'wrongdoer's lack of intent to violate the rules'" in fashioning sanctions.[34] One example of fault would be "trolling" for an opponent's former integral employees to take advantage of opposing counsel.[35]

*Counsel's Knowledge of Claim of Privilege.* If an attorney reviews materials clearly designated as privileged information or continues review once the attorney becomes aware there are claims of privileged information, disqualification may be warranted.[36]

---

[32] Kurbitz v. Kurbitz, 77 Wn.2d 943, 947, 468 P.2d 673 (1970) ("[A]ccess to confidential information which is material to the present suit" supports disqualification. (emphasis omitted)).

[33] Firestorm, 129 Wn.2d at 139-45; Fisons, 122 Wn.2d at 339-42; Richards v. Jain, 168 F. Supp. 2d 1195, 1208 (2001).

[34] Firestorm, 129 Wn.2d at 142 (quoting Fisons, 122 Wn.2d at 355-56). Additionally, the trial court may also consider the moving party's fault, such as its failure to timely apprise the court of the misconduct. See id. at 144-45.

[35] Id. at 143.

[36] See Richards, 168 F. Supp. 2d at 1205-06 (different case if counsel, "when first reviewing the documents with the plain and clear warning of 'attorney-client' and 'privileged' markings had . . . stopped all work and sealed or destroyed the documents").

*Lesser Sanctions.* Discovery sanctions serve to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the wrong.[37] Generally, the trial court should impose the least severe sanction adequate to serve the sanction's particular purpose, but not so minimal as to undermine the purpose of discovery.[38] Similarly, the harsh sanction of disqualification of counsel should only be imposed if it is the least severe sanction adequate to address misconduct in the form of improper access to privileged information.[39]

No one factor predominates or has greater importance than others. It is best practice to enter written findings and conclusions identifying the specific grounds relied upon for disqualification and applying the four factors above.[40] At a minimum, the record must permit us to evaluate the trial court's consideration of those four factors.[41]

Foss contends mere access to privileged communications requires disqualification under Firestorm. But Firestorm did not establish a per se rule that mere access to privileged information taints the judicial process and requires disqualification, regardless of the circumstances. Rather, Firestorm requires disqualification when counsel has access to an opposing party's privileged information *in a conflict of interest setting.*[42] In Firestorm, counsel violated

---

[37] Fisons, 122 Wn.2d at 356.

[38] Id. at 355-56.

[39] Firestorm, 129 Wn.2d at 139-45; Fisons, 122 Wn.2d at 339-42.

[40] Magaña, 167 Wn.2d at 583; see Burnet, 131 Wn.2d at 494.

[41] See Blair v. TA-Seattle E. No. 176, 150 Wn. App. 904, 909, 210 P.3d 326 (2009), rev'd on other grounds, Blair II, 171 Wn.2d at 352.

[42] Firestorm, 129 Wn.2d at 140.

10

CR 26(b)(5) by conducting an ex parte interview of an expert hired by opposing counsel. The court noted the "limited applicability" of the disqualification sanction.[43] The cases cited in Firestorm supporting its holding that counsel be disqualified upon access to an opposing party's privileged information all involve conflicts of interest.[44]

A disqualification based on a conflict of interest reinforces an attorney's fiduciary duty to protect his or her former clients' confidential information. But Welch's alleged discovery and ethical violations do not present the same concerns as a conflict of interest.

Further, CR 26(b)(6) provides that once a party has been notified that it has access to an opposing party's privileged information, that party "must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the party disclosed it before being notified." Nowhere does CR 26(b)(6) state that an attorney must be disqualified for acquiring an opposing party's privileged information. To the contrary, CR 26(b)(6) permits either party to "promptly present the information in camera to the court for a determination of the claim" of privilege. We reject any suggestion that an attorney's mere access to an opposing party's privileged information compels disqualification.

Foss attempts to distinguish Firestorm, but Firestorm and Fisons control. As in Firestorm, the trial court here neither made findings nor entered conclusions

---

[43] Id.

[44] Id. (citing First Small Bus. Inv. Co. v. Intercapital Corp., 108 Wn.2d 324, 337, 738 P.2d 263 (1987); Teja v. Saran, 68 Wn. App. 793, 798-99, 846 P.2d 1375 (1993); Intercapital Corp. v. Intercapital Corp., 41 Wn. App. 9, 16, 700 P.2d 1213 (1985)).

11

supporting its disqualification order. And as in Firestorm, Welch was not trolling for Vorwerk or attempting to "create delay or confusion" by interviewing Vorwerk.[45]

Therefore, because the trial court did not expressly apply the four factors of prejudice, counsel's fault, counsel's knowledge of claim of privilege, and possible lesser sanctions, we reverse the trial court's disqualification order and remand for further proceedings consistent with this opinion.

Practical Concerns in Arguing Prejudice

We note there are practical concerns in reviewing the disputed materials in order to effectively argue prejudice. Before appeal, Welch accessed and reviewed significant portions of Vorwerk's termination letter. But Brandewiede's counsel on appeal intentionally avoided reviewing any of Vorwerk's materials to preclude any suggestion of impropriety. As a consequence, he is unable to articulate the presence or absence of prejudice informed by the contents of the alleged privileged communications. In such a setting, it may be appropriate for the trial court to enter a protective order allowing special counsel to review the alleged privileged materials solely for the purpose of presenting argument in the trial or appellate court regarding prejudice.[46]

Such an order would be similar to a "quick-peek" agreement, where "counsel are allowed to see each other's entire data collection before production and

---

[45] Id. at 144.

[46] CR 26(c) permits a trial court to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

designate those items that they believe are responsive to the discovery requests."[47] Such an agreement does not constitute a waiver of privilege.[48] Using a similar approach in this context will insulate the privileged information and enable special counsel to address the significance and materiality of the privileged information to the underlying litigation.

### Tainted Records

The trial court's disqualification order, as drafted by Crosetto, excludes evidence "tainted" by Vorwerk's and Welch's "wrongful conduct."[49] This vague language is problematic, but Foss has made several concessions on appeal.

First, Foss concedes that "Brandewiede can offer the Vorwerk Letter (properly redacted to remove privileged communications)."[50] We read this as a concession that once the few pages that include an e-mail exchange with Foss's general counsel about potential liability from the *Alucia* project have been redacted, Foss will not object to the admission of the remainder of the letter based upon any claim of misconduct by Welch.

Second, Foss concedes that Brandewiede can also offer "non-privileged, non-proprietary, and non-confidential information on the thumb drive (all of which Foss

---

[47] Richard Van Duizend, *Guidelines for State Trial Courts Regarding Discovery of Electronically-Stored Information—What? Why? How?*, 35 W. St. U. L. Rev. 237, 252 n.36 (2007).

[48] Laura Catherine Daniel, Note, *The Dubious Origins and Dangers of Clawback and Quick-Peek Agreements: An Argument Against Their Codification in the Federal Rules of Civil Procedure*, 47 Wm. & Mary L. Rev. 663, 667 (2005).

[49] CP at 277.

[50] Resp't's Br. at 40-41.

has already produced in discovery)."[51] We read this as a representation that Foss has already produced all documents on the thumb drive except those for which Foss in good faith asserts a claim of privilege. The trial court has already conducted an in camera review of the Vorwerk letter and documents on the thumb drive and has concluded that "some (but not all) documents" reviewed by Welch "were clearly attorney-client communications."[52] The trial court may need to expressly determine which of the documents on the thumb drive are subject to attorney-client privilege. For those documents that Foss claims are not subject to discovery based upon proprietary or other confidential information, the trial court may conduct an in camera review to determine whether there is any valid basis for Foss to decline to produce them.

Moreover, there are significant distinctions between attorney-client privilege and proprietary or other confidential information. This appeal only concerns the unauthorized disclosure of privileged information. Because the briefing does not extend to other forms of proprietary or confidential information, those issues are beyond the scope of this appeal.

Lastly, Brandewiede suggests the trial court may have imputed Vorwerk's wrongful conduct in sanctioning Brandewiede and his counsel, but any claim against Vorwerk is beyond the scope of this appeal.

---

[51] Id. at 41.

[52] CP at 277.

14

## CONCLUSION

We conclude the trial court's order of disqualification does not satisfy the principles and guidelines of <u>Fisons</u> and <u>Firestorm</u>.  We therefore reverse the trial court's order of disqualification.  On remand, any order of disqualification will require the consideration and analysis of (1) prejudice, (2) counsel's fault, (3) counsel's knowledge of privileged information, and (4) possible lesser sanctions.  We reverse the existing order of disqualification and remand for further proceedings consistent with this opinion.

WE CONCUR: