**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| PAMELA J. BRIDGEN, an individual, and THE PAMELA J. BRIDGEN LIVING TRUST, | ) ) ) | No. 78581-8-I |
| | ) | DIVISION ONE |
| Petitioners, | ) ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WINDERMERE REAL ESTATE CO., a Washington corporation; EDWARD KRIGSMAN, in his individual and representative capacity; THOMAS A. FAIRHALL, as Trustee of the Södergren Family Trust; and THE SÖDERGREN FAMILY TRUST, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | FILED: May 28, 2019 |
| _____ | ) | |

LEACH, J. — This case arises out of a house purchase. Pamela J. Bridgen and the Pamela J. Bridgen Living Trust (collectively Bridgen) seek discretionary review of the trial court's disqualification of Bridgen's counsel, Valerie Anne Lee. RPC 3.7 provides for possible disqualification of counsel when she is likely to be a necessary witness. Bridgen claims that the respondents did not satisfy the three-part test for disqualification our Supreme Court established in Public Utility District No. 1 of Klickitat County v. International Insurance Co. (PUD No. 1).[1] Because the record does not show that (1) Lee's testimony would be material to

---

[1] 124 Wn.2d 789, 812, 881 P.2d 1020 (1994).

the issues being litigated, (2) is not obtainable elsewhere, and (3) would be prejudicial to Bridgen, RPC 3.7 does not authorize Lee's disqualification. We reverse and remand.

## FACTS

In August 2015, Bridgen purchased waterfront property on Lake Washington (Property). Bridgen claims that the home was marketed as "architecturally significant" because Ralph Anderson, a well-known architect, "designed and implemented" a remodel in the 1970s. In October 2017, she filed this lawsuit for violations of the Unfair Business Practices−Consumer Protection Act (CPA)[2] and negligent misrepresentation, claiming that Anderson neither designed the remodel nor was involved in the remodel work and the construction made the home unsafe for habitation.

Bridgen hired Lee to represent her in this lawsuit. Lee owns her own law practice and has represented Bridgen in various matters over the years. Bridgen and Lee are also friends and business partners. Together they own an environmental consulting business and investment property. They also own property individually. Bridgen signed a waiver of potential conflicts that could arise from their friendship or business dealings.

---

[2] Ch. 19.86 RCW.

On May 21, 2018, the Södergren Family Trust and its trustee, Thomas Fairhall (collectively Södergren), asked the trial court to disqualify Lee from representing Bridgen under RPC 3.7. They claimed that Lee was a necessary fact witness "intimately involved in the events underlying [Bridgen's] claims." On May 25, 2018, Windermere Real Estate Company and Windermere representative Edward Krigsman (collectively Windermere) also asked the trial court to disqualify Lee under RPC 3.7 and as a result of her alleged conflicts of interest.

The trial court denied Bridgen's request for oral argument on the disqualification requests. It then granted Södergren's request to disqualify Lee without entering findings of fact or conclusions of law. It did not rule on Windemere's request.

Bridgen asked the trial court to stay the disqualification for 45 days to allow Bridgen to retain counsel and also to extend all deadlines by 45 days. When Södergren and Windermere opposed these requests, the trial court denied them.

Bridgen asked this court for discretionary review of the trial court's decisions to disqualify Lee and to deny her request to extend the case schedule. A commissioner of this court granted review and stayed all case scheduling dates in the trial court pending this court's review.

STANDARD OF REVIEW

This court reviews a trial court's decision to disqualify counsel under RPC 3.7 for an abuse of discretion.[3] A court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[4]

ANALYSIS

Disqualification under RPC 3.7

Bridgen contends that the trial court should not have disqualified Lee. We agree. "Disqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary."[5] RPC 3.7 provides for possible disqualification of counsel, stating, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."[6]

In PUD No. 1, our Supreme Court established the showing required for disqualification under RPC 3.7: (1) "'the attorney will give evidence material to the determination of the issues being litigated,'" (2) "'the evidence is unobtainable elsewhere,'" and (3) "'the testimony is or may be prejudicial to the testifying

---

[3] State v. O'Neil, 198 Wn. App. 537, 543, 393 P.3d 1238 (2017).
[4] State v. Slocum, 183 Wn. App. 438, 449, 333 P.3d 541 (2014).
[5] In re Firestorm 1991, 129 Wn.2d 130, 140, 916 P.2d 411 (1996).
[6] RPC 3.7(a).

attorney's client.'"[7]   And when these factors are met, a lawyer likely to be a necessary witness still may represent her client if

> (1) the [lawyer's] testimony relates to an uncontested issue;
> (2) the [lawyer's] testimony relates to the nature and value of legal services rendered in the case;
> (3) disqualification of the lawyer would work substantial hardship on the client; or
> (4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.[8]

When applying RPC 3.7, "courts have been reluctant to disqualify an attorney absent compelling circumstances."[9]

*A.  Findings of Fact and Conclusions of Law*

As a preliminary issue, Bridgen claims that a trial court must make findings of fact and conclusions of law to support an order disqualifying counsel.  We disagree.

Bridgen relies on American States Insurance Co. ex rel. Kommavongsa v. Nammathao[10] to support her claim.  There, Division Three of this court held that the trial court abused its discretion by disqualifying counsel because he was not a necessary witness.[11]   It stated that while the trial court failed to make the necessary findings about the materiality and necessity of counsel's testimony

---

[7] PUD No. 1, 124 Wn.2d at 812 (quoting Cottonwood Estates Inc. v. Paradise Builders, Inc., 128 Ariz. 99, 105, 624 P.2d 296 (1981)).

[8] RPC 3.7(a)(1)-(4).

[9] PUD No.1, 124 Wn.2d at 812.

[10] 153 Wn. App. 461, 220 P.3d 1283 (2009).

[11] Nammathao, 153 Wn. App. at 467.

and any resulting prejudice to counsel's client, the record established that counsel was not a necessary witness.[12]  Division Three thus relied on the record to review the trial court's disqualification order.  This court has similarly held, "[Although i]t is best practice to enter written findings and conclusions identifying the specific grounds relied on for disqualification," an appellate court may review a disqualification order if the record allows it to evaluate the trial court's decision.[13]  Here, without trial court findings supporting its order disqualifying Lee, the record still allows this court to evaluate the trial court's consideration of the PUD No. 1 factors.

*B.  The* PUD No. 1 *Factors*

Bridgen contends that the record does not support Lee's disqualification under RPC 3.7 because Södergren and Windermere did not make a showing of the PUD No.1 factors.  We agree.

This court examines the PUD No. 1 factors in the context of Bridgen's complaint, which asserted two claims, violation of the CPA and negligent misrepresentation.  Bridgen based both claims on an allegation that she relied on an allegedly untrue representation that Anderson designed and was involved in an earlier remodel of the Property.

---

[12] Nammathao, 153 Wn. App. at 467.
[13] Foss Maritime Co. v. Brandewiede, 190 Wn. App. 186, 197, 359 P.3d 905 (2015).

-6-

I. Lee's Testimony Would Not Concern Material Evidence

Södergren and Windermere claim that Lee has knowledge material to Bridgen's decision to purchase, inspect, and remodel the Property. Evidence is material "when it logically tends to prove or disprove a fact in issue."[14] Among other elements, the CPA claim required that Bridgen show causation and injury to property and the negligent misrepresentation claim required a showing of causation, damages, and reliance on the defendant's false representations.[15]

Södergren asserts that Lee's use of "we" in a response e-mail to Debbie Jefferson, a real estate agent involved in selling the Property, shows Lee's personal involvement in Bridgen's decision to purchase the Property. On August 7, 2015, Lee wrote Jefferson the following:

> I just read your email to Pam who is reclining on the couch after a hard day. Dramatic reading I might add.
>
> We think 1.4.
>
> I have worked up my energy level to remodel the place. We are buying for the special view and waterfront in our neighborhood. Also you can't find a better proximity to my house.
>
> It takes a lot of imagination and diligence to make it a home that befits the architectural significance of the shell. Pam wants to retire and just sit on the deck and tells me we should could care less

---

[14] State v. Gersvold, 66 Wn.2d 900, 902, 406 P.2d 318 (1965).

[15] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986) (listing the elements of a CPA action); Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007) (listing the elements of negligent misrepresentation).

what the inside is like . . . okay . . . I want to sail and kayak but I do care about the inside. However, I know I can make it right at a level we can afford. We also will add close to a million to the value by the revisions . . . that is my goal as well as improving the aesthetics and creating a true livable space that is more faithful to the architect's original vision, which I imagine I know . . . .

BTW, where did the fridge go and what about the hydraulic lift?

So we write tomorrow and present Sunday. Pam will have a letter of financial availability for full cash.

All a little nerve racking but the office will sell and neither of us want to give 100K to the IRS. I really do love real estate. It has served us well and we are also frugal gals, but I have never felt we denied ourselves enjoyment by being frugal the way we do it. So it all works . . . no it's not like options . . . that's the point. I make sure it is not, but I do like to make money on our purchases.

(Alterations in original.)

Södergren asserts that the only reasonable interpretation of Lee's use of "we" is that she was "intimately involved" in negotiating the offer price, the reasons for buying the Property, the plans to remodel, and the intended use of the Property. Södergren also cites 17 e-mails related to negotiating the sale of the Property to which Lee was a party. Although Jefferson cc'd Lee on these e-mails, the above quoted e-mail was the only response that Lee wrote. Lee stated that she did not read any of the e-mails except the e-mail to which she replied. And Jefferson testified that she cc'd Lee because at the time of the Property negotiations, she mistakenly assumed Lee and Bridgen were domestic partners.

Bridgen's and Lee's declarations support that Bridgen purchased the Property alone over a seven-day period. Lee was not present (1) on August 5, 2015, when Bridgen called Jefferson to inquire about purchasing the Property, (2) on August 7 when Jefferson first showed Bridgen the Property, (3) on August 9 when Bridgen attended an open house held by Krigsman, Windermere's representative, where Krigsman described Anderson's involvement in the remodel, and when Bridgen prepared and signed an initial offer, or (4) on August 12 when Bridgen made her revised final offer and Södergren accepted. In addition, Lee did not review the purchase and sale agreement (PSA), the PSA lists Bridgen as the sole buyer of the Property, Lee acquired no interest in the Property, and Lee did not contribute any funds toward its purchase.

During the purchase process, Lee was involved in two minor instances. First, she wrote the e-mail response quoted above. Bridgen stated that she was at Lee's for a social visit when Lee checked Lee's e-mail and read her Jefferson's e-mail. Bridgen tried calling Jefferson with no reply, so she asked Lee to respond to Jefferson saying that she would like to make an offer at $1.4 million. Bridgen explained, "The meaning of the word 'we' in the e-mail is different depending on where it is in the e-mail. It refers to me and Jefferson in the context of the offer." Second, Lee attended a preinspection of the Property on August 10 with Bridgen, Jefferson, John Langmeyer, the general contractor

Bridgen hired to inspect the home, and a sewer inspector.  Langmeyer testified that Bridgen was his client and the only person to whom he reported.

Although Lee had minimal involvement with Bridgen's purchase of the Property, Södergren claims Lee has knowledge material to three issues.  First, Södergren contends Lee has personal knowledge about the level of Bridgen's reliance on statements about Anderson's involvement in the previous remodel of the Property.  It claims that because Lee does not mention Anderson in her above-quoted e-mail response, her e-mail undermines Bridgen's claim that Bridgen relied on Anderson's participation in the remodel when buying the Property.  Bridgen stated that she remembers conveying her "excitement" to Lee on August 7 that Anderson was involved in designing the house.  But other than this instance, Bridgen stated that she cannot recall whether she discussed Södergren or Anderson with Lee during the seven-day purchase period.  And Jefferson testified that she has no memory of any conversation with Bridgen about the architectural history of the Property beyond telling Bridgen who Anderson was.  Södergren contends that Lee's testimony about her e-mail response is thus material to issues of reliance, causation, and damages; it is material to Bridgen's claim that but for her belief about Anderson's involvement, she would not have purchased the Property or raised her offer from $1.4 million to over $1.7 million.  But due to Lee's minimal involvement and the fact that

Södergren can present the e-mail evidence without Lee's testimony, as discussed below, her testimony about the circumstances surrounding her e-mail is not material.

Second, Södergren claims that Bridgen asked Lee's advice about the purchase price, which relates to damages. Södergren relies on an e-mail Lee wrote in March 2018, in which she merely stated, "Bridgen was excited to show a friend the house and to get my two cents on prices of houses in the neighborhood where I live and also bring me to show off the home after closing." And Södergren contends that neither Lee nor Bridgen have denied that Bridgen used their joint account and Lee's investments to support her offer to purchase the Property. But this speculation does not show that Lee's testimony would be material to a disputed issue. Further, Bridgen stated that she used her trust account to pay the $85,000 in earnest money, she is the sole trustee and beneficiary of her trust, and hers was the only signature on the PSA. This evidence does not show that Lee had sufficient involvement in the conversation about purchase price to establish that her testimony would be material to the issue of damages.

Third, Södergren claims that the record demonstrates that Lee has knowledge about the condition of the Property at the time of purchase and about the scope of Bridgen's desired remodel, which also relate to damages.

Södergren relies on Lee's presence at the preinspection and an e-mail from Jefferson about Lee's involvement with Bridgen's plans to remodel the home. But multiple disinterested witnesses attended the preinspection, including Jefferson, Langmeyer, and a sewer inspector. And Lee's participation in or knowledge of a postsale remodel is not relevant to her claims.

Södergren does not establish that the record shows that Lee's testimony would be material to any disputed issues.

## II. Lee's Testimony Is Obtainable Elsewhere

Södergren next claims that it cannot obtain from another source the evidence it would present through Lee's testimony. First, it asserts that Lee is the only nonparty witness to the preinspection. Although Jefferson testified that she did not remember anything about the preinspection, Langmeyer was also at the inspection. His declaration shows that he remembers the inspection and details his findings and opinions.

Second, Södergren asserts that Lee is the only nonparty witness to her discussions with Bridgen about Bridgen's reasons for purchasing the Property and purchase price. But the probative value of Lee's likely testimony about Bridgen's reasons for purchasing the Property and purchase price is low because Södergren does not provide sufficient evidence showing that Lee's knowledge of these subjects is robust. And Södergren and Windermere can admit Lee's e-mail

response to Jefferson through Jefferson's testimony[16] or submit a written request for admission to authenticate the e-mail and then offer it as an exhibit.[17]

Third, Södergren maintains that because Lee requested copies of any architectural drawings of the Property from Jefferson and Bridgen "does not have a specific recollection" about any conversation about the drawings, only Lee can testify about this material evidence. But Lee requested these drawings in relation to the postpurchase remodel. Bridgen stated that she had asked Lee to help her with a minor remodel of the house. And it was not until after mutual acceptance that Bridgen asked an agent involved in the sale whether the sellers had the Anderson drawings of the house. As stated above, Lee's involvement with a postpurchase remodel is not relevant to Bridgen's claims.

Södergren does not show that it cannot obtain from another source any relevant testimony Lee would offer about these issues.

III. Lee's Testimony Would Not Prejudice Bridgen

Södergren also contends that Lee's testimony would likely prejudice Bridgen's claims because Lee included in her response e-mail to Jefferson that Bridgen was buying the Property "for the special view and waterfront." After Lee

---

[16] ER 901(b)(10) (stating that an e-mail may be authenticated through the testimony of the recipient).

[17] KING COUNTY SUPER. CT. LOCAL CIV. R. 26(b)(4) (stating a party may serve unlimited "requests for admission . . . propounded to authenticate documents").

sent this e-mail, however, Bridgen visited the house alone and discussed Anderson's influence on it with a Windermere representative. She then did independent research into the architectural significance of the house and Anderson. Finally, she negotiated the sale herself and raised her offer from $1.4 million to over $1.7 million. Södergren does not show that Lee had sufficient involvement to provide material testimony, unobtainable elsewhere, that would likely prejudice Bridgen.

The trial court abused its discretion by disqualifying Lee under RAP 3.7. Because resolution of this issue is dispositive, we do not address the parties' other claims.

Trial Court Assignment on Remand

Bridgen contends that this court should require reassignment on remand. She cites the principle that "[i]t is fundamental to our system of justice that judges be fair and unbiased."[18] The party claiming a violation of the appearance of fairness must show a judge's actual or potential bias.[19] Bridgen asserts that the trial court showed bias toward her and Lee by disqualifying Lee late in the case without making necessary findings and without hearing oral argument and by denying her request for a continuance so she could secure new counsel.

---

[18] Chi., Milwaukee, St. Paul & Pac. R.R. v. Wash. State Human Rights Comm'n, 87 Wn.2d 802, 807, 557 P.2d 307 (1976).
[19] State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017).

As discussed above, the trial court did not err in not making findings because the record allows for review. And, in King County, unless an exception applies, "[a]ll nondispositive motions . . . shall be ruled on without oral argument."[20] So, in King County, a trial court's denial of a request for oral argument does not necessarily show bias. In addition, "[j]udicial rulings alone almost never constitute a valid showing of bias."[21] The trial court's ruling unfavorable to Bridgen does not warrant reassignment on remand. We deny Bridgen's reassignment request.

## Attorney Fees

Södergren asks that this court award it attorney fees on appeal under the PSA and RAP 18.1(a). RAP 18.1 allows a reviewing court to award a party reasonable attorney fees if applicable law grants a party the right to recover them. Here, the PSA states, "[I]f Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." But no party has prevailed on the merits of Bridgen's claims, so any fee request is premature.

---

[20] KING COUNTY SUPER. CT. LOCAL CIV. R. 7(b)(3).
[21] In Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004).

CONCLUSION

We reverse and remand. Because the evidence in the record does not satisfy the PUD No. 1 factors, the trial court erred in disqualifying Lee under RPC 3.7.

_Leach, J._

WE CONCUR:

_Verellen, J._          _Schindler, J._