**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PATTY HUR, individually, | ) | No. 38363-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD & WILLIAMS, LLC, a | ) | |
| Washington limited liability company; | ) | |
| DEWIGHT L. HALL, JR., individually; | ) | PUBLISHED OPINION |
| and TOD W. WILMOTH, individually, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| PRIORI CULTIVATION, INC., a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Defendant. | ) | |

PENNELL, J. — Electronically stored information is ubiquitous in contemporary law practice. When an attorney responds to a discovery request by sending electronically stored information to opposing counsel, care must be taken to avoid inadvertent disclosure of embedded information that might be subject to a claim of privilege. Nevertheless, if an inadvertent disclosure happens, the receiving attorney must take corrective action, including notifying the sender. Sanctions must be imposed if an attorney fails to take corrective action, with the most severe sanction being disqualification.

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

Counsel for Lloyd & Williams, LLC, and its members, Dewight Hall Jr. and Tod W. Wilmoth (collectively L&W), inadvertently disclosed information subject to a claim of privilege when it sent electronic discovery responses to opposing counsel that had been partially redacted but not scrubbed of embedded text. Instead of notifying counsel for L&W and sequestering the documents, opposing counsel cited portions of the embedded text in support of a summary judgment motion. This prompted L&W to move for opposing counsel's disqualification.

The failure of opposing counsel to take corrective action violated rules of civil procedure and professional conduct. Nevertheless, the trial court ruled disqualification was not an appropriate sanction because counsel's rule violations were not intentional. Having accepted discretionary review of this matter, we find no abuse of discretion in the trial court's choice of sanction. Accordingly, we affirm.

FACTS

Patty Hur is embroiled in a contract dispute with L&W. Responding to a discovery request, L&W's lawyer, George Ahrend, sent more than 1,000 pages of e-mails to Ms. Hur's lawyer, Heidi Urness. The discovery was sent electronically and was accompanied by a notice stating privileged information had been redacted. Mr. Ahrend later explained he redacted the purportedly privileged e-mails by blacking out the substantive content,

2

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

leaving the header information (i.e., date, sender, recipient, and subject) visible in lieu of a privilege log.[1]

More than one year after receipt of the discovery responses, Ms. Hur moved for partial summary judgment. Attached to Ms. Hur's declaration in support of the motion were two exhibits taken from Mr. Ahrend's discovery materials. The exhibits are screenshots, and each image has a left-hand column and a right-hand column. The left-hand columns display the results of keyword searches. The search results are sentence fragments containing the search terms "Maggie" and "rent,"[2] accompanied by a denotation of how many "matches" had been found in the searched documents. Clerk's Papers (CP) at 71-74. Alongside each set of search results, in the images' right-hand columns, appears a visual of e-mail headers followed by completely blacked out text.

Mr. Ahrend reviewed Ms. Hur's summary judgment submissions and recognized the e-mail fragments as content he had intended to redact. Upon further investigation, Mr. Ahrend discovered his attempt at redaction had been only partially successful.

---

[1] Mr. Ahrend used a software program called "DocReviewPad" to redact the e-mails. He believed this program would remove metadata. Pet'rs' Opening Br. at 3.

[2] According to Ms. Urness, she used these terms because she was searching for evidence supporting Ms. Hur's claim that her former attorney, Maggie Widlund, had discussed the issue of rent payments with L&W's representatives. Clerk's Papers at 170-71, 179.

3

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

Although portions of the discovery had been blacked out, the metadata[3] associated with

the redacted portions had not been removed from the documents produced. As a result,

the content of the blacked-out text was discoverable upon performing a word search of

the document.

L&W moved to disqualify Ms. Urness from the case, alleging her receipt and

retention of privileged materials violated ethical and discovery court rules. Ms. Urness

denied any wrongdoing. She provided various explanations for her conduct, including

assertions that she did not understand metadata and that she had received at least some of

the information from a third party. Ms. Urness also argued the e-mails were not privileged

and that they revealed L&W had engaged in its own ethical violations by withholding

information and making misstatements to the court.[4] Ms. Urness was adamant she had not

tried to uncover privileged information, but had simply performed a word search of the

discovery materials.

---

[3] "Metadata is the 'data about data' that is commonly embedded in electronic documents." Wash. State Bar Ass'n Rules of Prof'l Conduct Comm., Advisory Op. 2216 (2012), available at https://ao.wsba.org/searchresult.aspx?year=&num=2216&arch= False&rpc=&keywords=.
[4] The e-mail excerpts appeared to show L&W was aware Ms. Hur had made rent payments on L&W's leased premises, a factual issue that had been the subject of dispute.

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

The superior court denied L&W's motion to disqualify Ms. Urness. The court

opined that some of Ms. Urness's explanations were suspicious but credited Ms. Urness's

assertion that she did not knowingly search through privileged material. Furthermore, the

superior court acknowledged that disqualification is an extraordinary remedy, imposed

only in extremely rare circumstances. The court fashioned alternate remedies: it ordered

Ms. Urness to destroy the files, promised to banish the e-mail excerpts from the court's

decision-making, and instructed the parties to not mention the excerpts again.

L&W sought discretionary review of the superior court's order denying its motion

for disqualification. We accepted review.

### ANALYSIS

Our review of the trial court's order denying disqualification involves two

steps. First, we assess the nature and extent of the rule violations giving rise to the

disqualification motion. This is a legal matter, reviewed de novo. *In re Firestorm 1991*,

129 Wn.2d 130, 135, 916 P.2d 411 (1996). Second, if a violation is found, we assess

whether disqualification is an appropriate remedy. We review the trial court's choice of

remedy for abuse of discretion, keeping in mind that disqualification is a drastic sanction

that should be limited to egregious violations. *Id.* at 140; *Wash. State Physicians Ins.*

*Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 355-56, 858 P.2d 1054 (1993).

5

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

*1. The nature and extent of the rule violation*

L&W alleges Ms. Urness's conduct violated two court rules governing the handling of discovery that is subject to a claim of privilege. The rules are as follows:

> A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender.

RPC 4.4(b).

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the party disclosed it before being notified. Either party may promptly present the information in camera to the court for a determination of the claim. The producing party must preserve the information until the claim is resolved.

CR 26(b)(6).

Taken together, these rules require a recipient of inadvertently disclosed information subject to a claim of privilege to notify the sender and either return, sequester, or destroy the materials. Under CR 26(b)(6), the attorney can share the materials with the court in camera if privilege is disputed. But until the issue of privilege is resolved, the attorney should not disclose the materials to others, including the public by way of a nonconfidential court filing.

6

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

L&W contends Ms. Urness violated the foregoing rules by reading its privileged e-mails. This is incorrect. The rules do not prohibit a lawyer from reading inadvertently disclosed information that is subject to a claim of privilege. The only proscription is of the failure to take corrective action.

L&W also claims Ms. Urness somehow purposefully "looked behind the redactions" to view privileged materials. Pet'rs' Opening Br. at 20. Had this occurred, it would have been a significant ethical breach. *See* Wash. State Bar Ass'n (WSBA) Rules of Prof'l Conduct Comm., Advisory Op. 2216 (2012). But the record does not support L&W's claim. When Mr. Ahrend's office produced the discovery responses, his staff advised Ms. Urness that information subject to a claim of privilege had been redacted. Proper redaction means taking reasonable steps to prevent disclosure of confidential metadata. *See id.*; RPC 1.6(c). There is nothing improper or unreasonable in conducting a word search on materials containing redactions. Nor is it unethical to simply read the results of that word search. *See* WSBA Advisory Op. 2216 (noting that "[u]nder the ethical rules," a recipient of inadvertently sent metadata is "not required to refrain from reading the document, nor [are they] required to return the document" to the sender). Indeed, it is only by reading the materials, at least cursorily, that a recipient can be expected to discover in the first place that they were inadvertently sent privileged

7

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

information.

While the rules did not forbid Ms. Urness from reading the e-mail excerpts, the record nevertheless indicates she violated RPC 4.4(b) and CR 26(b)(6). Upon reviewing L&W's discovery materials, Ms. Urness should have understood she was able to discover portions of e-mails that were supposed to have been redacted due to a claim of privilege. Ms. Urness may have disagreed with the claim of privilege, but this did not excuse her from taking corrective action. Upon discovering electronically stored information subject to a claim of privilege, Ms. Urness was required to notify Mr. Ahrend and either return, sequester, or destroy the materials in question. She should not have used the materials in support of Ms. Hur's motion for summary judgment without first obtaining a court order designating the materials as not privileged. Ms. Urness's failure to take corrective action upon discovery of the privileged information and her use of the materials in support of summary judgment are violations that required some sort of sanction. *Fisons*, 122 Wn.2d at 355.[5]

---

[5] On discretionary review to this court, Ms. Urness has continued to dispute whether the e-mails were privileged. The trial court has apparently issued an order finding the e-mails privileged. That order is not before this court and the trial court's privilege determination is not material to our disposition. Nothing in our decision should be read as opining on L&W's claim of privilege or whether the claim of privilege should be subject to reconsideration or a later direct review.

8

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

*2. Whether disqualification is an appropriate remedy*

Trial courts have a variety of options when issuing sanctions for discovery violations involving a claim of privilege. Attorney disqualification is the most severe sanction and should not be imposed unless "absolutely necessary." *Firestorm*, 129 Wn.2d at 140. Our court has identified four factors trial courts must consider in determining whether disqualification is an appropriate remedy for an attorney's access to privileged information: (1) prejudice, (2) counsel's fault, (3) counsel's knowledge of the claim of privilege, and (4) the possibility of lesser sanctions. *Foss Mar. Co. v. Brandewiede*, 190 Wn. App. 186, 195, 359 P.3d 905 (2015). "No one factor predominates or has greater importance than others." *Id.* at 197. Though it may be "best practice" for the superior court to enter written findings on each of the factors, the superior court need not do so as long as the record permits the appellate court "to evaluate the trial court's consideration" of the factors. *Id.*

We assess each of the four factors in turn.

*a. Prejudice*

With respect to the first factor, L&W has not suffered significant prejudice as a result of Ms. Urness's rule violations. Ms. Urness would have learned of the information in the e-mails even if she had taken the corrective action required by RPC 4.4(b) and

9

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

CR 26(b)(6). Furthermore, because Ms. Urness disputed L&W's claim of privilege and because she believed the materials at issue revealed ethical violations by L&W and Mr. Ahrend, she almost certainly would have disclosed the e-mails in question to the trial judge, in camera, had she followed the applicable rules. Thus, the trial judge, like Ms. Urness, was not exposed to any information that would have gone unknown had Ms. Urness not violated the applicable rules.

The only material change caused by Ms. Urness's rule violations is that L&W's redacted materials have been made public. However, L&W has not articulated any reason why this revelation is prejudicial. During oral argument, Mr. Ahrend represented that the two e-mail fragments were of minor significance because they are consistent with his clients' version of the facts. Wash. Court of Appeals oral argument, *Hur v. Lloyd & Williams, LLC*, No. 38363-6-III (Nov. 8, 2022), at 10 min., 30 sec. to 10 min., 38 sec. ("There's nothing incompatible with those e-mails and [L&W's] testimony as to what happened in this business transaction that went sour."), *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-3-court-of-appeals-2022111202/?eventID=2022111202. Prejudice has not been shown and therefore does not weigh in favor of disqualification.

10

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

### b. Fault

While Ms. Urness was at fault for failing to take corrective action once she discovered she had been inadvertently provided materials subject to a claim of privilege, her culpability is not as severe as claimed by L&W. Consideration of fault weighs against disqualification where an attorney gained access to purportedly privileged information through an "inadvertent disclosure by the opposing party." *Foss*, 190 Wn. App. at 196. There is no evidence suggesting Ms. Urness purposefully sought to uncover privileged information or unredacted metadata. L&W points to Ms. Urness's choice of search terms and posits Ms. Urness would not have known to use the search terms unless she was engaged in sophisticated wrongdoing. We disagree. The record reflects Ms. Urness knew what search terms to use because she had conferred with her client and her client's former attorney and was looking for documents that corresponded to their version of events. This is not suspicious conduct. It is the type of behavior one would expect of a competent attorney.

### c. Knowledge

With respect to the third factor, the question is whether Ms. Urness reviewed materials "clearly designated as privileged" or "continue[d] review" after becoming aware she had inadvertently accessed privileged information. *Id.* Here, Ms. Urness

11

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

violated the discovery rules by failing to take corrective action once a reasonable person would have realized the e-mail excerpts contained information subject to a claim of privilege. But the trial court found this violation was not intentional. We defer to this finding as it was not clearly erroneous.

According to L&W, the facts before the court compel the conclusion that Ms. Urness had lied to the court and engaged in intentional misconduct. We are unpersuaded. Unlike Mr. Ahrend, Ms. Urness was not able to compare the results of her word search with the unredacted discovery responses in order to verify she had accessed information that was subject to a claim of privilege. Even a sophisticated computer user would likely have been confused upon initially encountering results of a word search that did not match up with the contents of the visible text. Someone familiar with metadata would likely come to realize that the mismatched content was attributable to embedded text that had been insufficiently redacted. But an individual such as Ms. Urness, who claims an unfamiliarity with metadata, might have a hard time overcoming the initial confusion.[6]

---

[6] We do not mean to excuse counsel's lack of familiarity with metadata. The Rules of Professional Conduct require competent representation, including "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." RPC 1.1. To the extent a lawyer uses computer technology in communications, document management, or the exchange of electronic discovery, competent representation requires an understanding of metadata. *See* WSBA Advisory Op. 2216.

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

L&W claims the trial court's credibility determination was tainted by legal error because Ms. Urness's statements to the court were unsworn and because the court improperly utilized a heightened standard of proof. Neither concern is valid. Ms. Urness is a licensed attorney. Her professional oath prohibits knowingly making a false statement of fact or law to the court. RPC 3.3(a)(1). The trial court was entitled to rely on Ms. Urness's explanations of her conduct, made in open court, without the necessity of administering an oath. *See id*. cmt. 3. And while the trial court did comment that it wanted to be "very clear" that Ms. Urness "absolutely knew" she was doing something wrong before disqualifying her, this was in the context of selecting an appropriate penalty, not part of the court's credibility assessment. CP at 204-05. We interpret this comment as simply reflecting the trial court's accurate legal assessment that it should not impose disqualification unless it was convinced doing so was "absolutely necessary." *Firestorm*, 129 Wn.2d at 140.

### d. Possibility of lesser sanctions

Disqualification will not always—or even often—be an appropriate sanction when a lawyer has behaved in a troubling or unethical way. *Id*. (noting disqualification's "limited applicability"). Because disqualification is a drastic remedy that severely penalizes parties for their counsel's misconduct, it is warranted only if less severe

13

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

sanctions are inadequate to address counsel's rule violations. *Id.* at 142-45; *see also*

*Fisons*, 122 Wn.2d at 355-56 (directing trial courts to impose the "least severe" sanction

adequate to address counsel's misconduct). Here, the standard for disqualification has not

been met. Given Ms. Urness would have learned of the information L&W claimed was

privileged even if she had abided by the rules, disqualification was not necessary to deter

misconduct or preserve public confidence in the judicial system. The trial court did issue

a lesser remedy designed to ensure Ms. Hur would not profit from her lawyer's rule

violation. Specifically, the trial court ruled that not only must Ms. Urness destroy the

files, the court also stated it would not consider the e-mail excerpts going forward.

This measured sanction was appropriate under the circumstances.

L&W cites *Firestorm* for the proposition that disqualification is required when

counsel has accessed an opposing party's privileged materials. But "*Firestorm* did not

establish a per se rule that mere access to privileged information taints the judicial process

and requires disqualification, regardless of the circumstances." *Foss*, 190 Wn. App. at

197. Rather, *Firestorm* made disqualification mandatory only in the context of a conflict

of interest, which is not at issue here. *Id.* (citing *Firestorm*, 129 Wn.2d at 140). An

attorney's "mere access to an opposing party's privileged information" does *not*

"compel[ ] disqualification." *Id.* at 198.

No. 38363-6-III
*Hur v. Lloyd & Williams, LLC*

None of the four applicable factors mandate disqualification as an appropriate remedy for Ms. Urness's rule violations. The trial court did not abuse its discretion in denying L&W's disqualification motion and imposing a lesser sanction.

CONCLUSION

We affirm the trial court's order denying L&W's motion for disqualification. This disposition is without prejudice to any future case developments. For example, Ms. Urness represented to this court during oral argument that the only redacted materials she accessed were the two e-mail excerpts referenced in Ms. Hur's motion for summary judgment. Wash. Court of Appeals oral argument, *supra*, at 24 min., 45 sec. to 25 min., 10 sec. We expect that, as a licensed attorney, Ms. Urness's representation to this court was truthful. In the unlikely event this was not the case, a new motion for sanctions may be appropriate.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Fearing, J.

15